92   353
38a  406

92   353
82a  243

92   353
f88a 598

92    353
d187  ³ 32

ILLINOIS AND ST. LOUIS RAILROAD AND COAL COMPANY

*v.*

JOSEPH OGLE.

1.   PUNITIVE DAMAGES—*whether allowable in trespass quare clausum fregit.* Where one engaged in mining and removing coal from his own land, crosses the line and proceeds to mine and remove coal from the land of another, not by mere mistake, but knowingly and wilfully, in an action of trespass by the owner of the land so intruded upon, the jury will be warranted in giving punitive damages.

2.   WEIGHT OF EVIDENCE *and credibility of witnesses—in what manner determined.*   In determining the weight to be given to testimony the number of witnesses being greater upon the one side or the other, while it is a consideration always to be looked to, yet that of itself is by no means to be regarded as a controling one.   There are many other equally important tests of truth,— chief of which is that of a cross-examination in the presence of the court and jury.   The witness' manner, demeanor and bearing upon the stand,—his replies, whether frank and open, or reluctant and evasive,—his manner of expressing himself, whether moderate, dignified and respectful, on the one hand, or extravagant, impertinent and reckless, on the other; the intelligence of the witness, and means of information in respect to the matters of which he speaks,—his relation to the parties to the suit,—his interest in the result,—all these are of vital importance in determining the credit to be given to the witness.   But these can not all be presented in a record and be transmitted to another court to enable it to review the testimony by the same lights,—hence the rule that this court will not reverse upon the evi-

dence merely because it may appear to us that the preponderance may be against the verdict.

3. MEASURE OF DAMAGES—*in an action of trespass quare clausum fregit for mining and carrying away coal from the land of another—former decisions.* It was held in the cases of *Robertson* v. *Jones*, 71 Ill. 405, and *Illinois and St. Louis Railroad and Coal Co.* v. *Ogle*, 82 id. 627, that in an action of trespass for mining and taking coal from the plaintiff's land, he may recover the value of the coal at the mouth of the pit, less the cost of carrying it there from the place where it was dug, allowing the defendant nothing for digging. In this case, after a full review of the question, the rule of damages as above laid down is adhered to.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. G. & G. A. KŒRNER, for the appellant:

This was an action of trespass *quare clausum fregit* for mining and carrying away coal from the land of appellee. The coal was mined upon the land of appellee by mistake. We again ask that the rule as to the measure of damages in such cases, as laid down in *Robertson* v. *Jones*, 71 Ill. 405, and *Illinois and St. Louis Railroad and Coal Co.* v. *Ogle*, 82 id. 627, be reconsidered by this court. The rule is violative of the principle *that a party injured is entitled to compensation, and no more,* where the injury has not been wilfully inflicted. And even in the latter case, there is an evident leaning on the part of courts to do away with the doctrine of punitive damages. See *Bass* v. *Chicago and Northwestern Railroad Co.,* recently decided by the Supreme Court of Michigan.

The court will observe that this is an action of trespass *vi et armis* for breaking the close of plaintiff and digging on the land, which is the *gravamen* of the charge, and taking away the coal. It is not an action of trover, where a demand is made for the property taken, and where the plaintiff goes on the principle that the property is not changed and that he is entitled to its return. If defendant refuses to let him have the property, he makes himself liable for the consequences, whatever they may be.

If plaintiff chooses he may also have his action of replevin, and if he identifies the property he can take it, although the defendant by his labor may have bestowed additional value to it. These actions are in the nature of what the civilians call the *rei vindicatio*. But in an action of trespass the plaintiff goes upon the principle that he has lost his property and the defendant has acquired it, and he seeks his compensation in damages to be assessed according to the amount of his loss. He will generally fare well if he gets that, in cases of trespass on coal land; because, in leasing the land for coal mining he would receive his money by installments,—would run the risk of losing his rent,—while if after a lapse of time he ascertains that his neighbor has encroached upon him, he at once gets full pay for all the coal taken out, and interest too, from the time the taking has taken place.

We insist upon this difference in the actions. It is not a mere formal and technical difference, but an essential one. The actions of detinue and replevin go upon the principle that there is no change in the property, and the plaintiff seeks to recover the specific thing.

The action of trespass, both *vi et armis* and on the case, is exclusively for the recovery of damages such as the party has actually sustained (except when the principle of punitive damages is allowed to operate). In suing for the taking of personal property in trespass the person injured waives the property in the thing, allows it to be in the wrong-doer and claims damages in lieu of the property lost. The proper definition of damages is the indemnity given by law, to be recovered from a wrong-doer by a person injured in his rights, person or property. 1 Bouv. Law Dictionary, *sub verbo* "Damages."

Upon the principal question,—that in relation to the measure of damages,—we call the attention of the court to a late unanimous decision of the Supreme Court of Michigan, of January term, 1876, *Winchester* v. *Craig et al.* (reported in Central Law Journal, vol. 3, No. 7, Feb. 18, 1876). The case, however, was an action of trover, for cutting timber

by mistake.   The value of the timber standing was proved to be worth $1.50 per thousand feet, the cost of cutting 50 cents. The timber at the Toledo market was worth $12.00 per thousand feet.

The jury found the value of the timber at $2.00 per thousand feet and gave damages accordingly.   The plaintiff appealed, but the court affirmed the judgment.

In one respect this court, in the case of *Robertson* v. *Jones et al.*, and the Supreme Court of Michigan agree, that is to say, both courts hold that there ought to be no distinction between trover and trespass.   But the Michigan court, while indicating that in the latter action the plaintiff could have only recovered the actual damage, says the same principle should be applied to an action of trover; while this court, upon the idea that in trover the value at the time of conversion could be recovered, allows the same thing to be done in an action of trespass.

The Supreme Court of Michigan does not found its opinion simply upon sound reasoning, but refers to several authorities of high standing.

We have examined the cases cited carefully, and they fully bear out the doctrine that no more than the actual value of the coal in the mine could be recovered.

The first case to which reference is made is that of *Wood* v. *Moonwood*, 3 A. and E. N. S. 440, where PARK, B., instructed the jury : If there was fraud or negligence on the part of the defendant, they might give as damages under the count of trover (which was joined to a count in trespass) the value of the coals, on the principle as laid down in *Martin* v. *Porter*, 5 M. and W. 351, (which is the principal case relied on by this court in *Robertson* v. *Jones et al.*) but if they thought the defendant was not guilty of fraud or negligence, but acted fairly and honestly with full belief that he had a right to do whatever he did, they might give the fair value of the coal as if the coal fields had been purchased from the plaintiff.

In the case just cited it appears, from the report, that the

plaintiff had proved the value of the coal as severed to be worth between £10,000 and £11,000. The jury, finding no fraud, gave under instructions of the court a verdict of £2,301.

The Supreme Court of Michigan then examines the New York cases where (in trover) a contrary doctrine seems to have been held, and comes to the conclusion that the latest cases in that State seem to overrule the former, and that it is very doubtful whether the present court would adhere to their former decisions. See also, *Heard* v. *Jones*, 49 Miss. 236.

We also specially rely on *Baldwin* v. *Potter*, 12 Conn. 484, where the court say: "That the value of the property converted is the general rule of damages in an action of trover, is admitted. To this rule there are exceptions. And both rule and exceptions proceed upon the principle that the plaintiff ought to recover as much and no more damages than he has actually sustained, which commonly is the value of the property. No good reason, consistent with moral principle, can be suggested why greater damages should ever be recovered than have in truth been sustained, except where the law permits by way of punitive justice the recovery of vindictive damages."

In Pennsylvania the leading case is *Forsythe* v. *Wells*, 41 Penn. St. 291. See also, *Hill* v. *Canfield*, 56 Penn. St. 454.

The case of *Martin* v. *Porter*, 5 M. & W. 353, it is admitted, sustains the rule adopted by this court. But in a later case, *Wood* v. *Moonwood*, 43 E. C. L. 810, it was not adhered to. To be sure, this was a *nisi prius* decision, but by a very eminent judge, and although distinguished counsel were opposed to this ruling, they did not move for a rule to set the verdict aside. It is very true that in the still later case of *Meyer* v. *Powell*, the Court of King's Bench fell back on the first authority of *Martin* v. *Porter*, but it is to be remarked that when *Meyer* v. *Powell* was first tried before COLERIDGE at *nisi prius*, he entirely disapproved of the rule as established in *Martin* v. *Porter*, and only reluctantly yielded to authority. But even in the decision by Lord DENMAN in *Meyer* v. *Powell*,

we do not find the rule to be laid down as a universal one, for it concludes in this wise: "Instances may be easily supposed where particular circumstances would vary this mode of calculating the damage, but none such appear." This decision, *Meyer* v. *Powell*, was made in 1842.

The same question arose in 1871 in the Court of Chancery in England. Chancery Appeals, vol. 6, pp. 761, 762. Lord Chancellor HATHERLY, expresses his disapprobation of the rule laid down in *Martin* v. *Porter* and *Meyer* v. *Powell*, and adverted to the inconsistency of the principle applied by the courts at common law, and although the courts of chancery in England adopt almost universally the rules of property as established by the courts of common law, he modified the master's report, who had assessed the damages in a coal mine case according to the rule laid down by Lord DENMAN, and directed the master "to assess the value of the mineral and coal got from the mines, the defendant to be charged with the fair value of such coal and other minerals at the rate as if the mines had been purchased by the defendant at the fair market value of this district."

The current of American authorities, we think, sustains the rule we contend for. United Mirthy Collier Co. *ex parte*, 17 Am. R. 529; *Forsythe* v. *Wells*, 41 Pa. 291; *Hardin* v. *York*, 55 id. 176; Aldeman appeal, 62 id. 278; *United States* v. *Magoon*, 3 McLean, 171, a case which arose in Illinois, and which decided that for lead mined in the ore, the damages should be the lead in the ore and not mined; *Baldwin* v. *Potter*, 12 Conn. 44; *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80; *Goller* v. *Felt*, 30 Cal. 482; *Single* v. *Schneider*, 30 Wis. 570, a very strong case, where the cutting of timber had been wilful; *Waymouth* v. *Railroad Co.* 24 Wis. 290; *Weatherbee* v. *Green Davis*, 22 Mich. 311; *Hungerford* v. *Bedford*, 29 Ind. 345 ; *Waters* v. *Stevenson*, decided by the Supreme Court of Nevada at the April term, 1878; reported in "The Reporter," vol. 6, p. 428, also in "Central Law Journal," vol. 7, p. 301.

The latter case is a very well considered and exhaustive opinion, reviewing all decisions on the point, including *Robertson* v. *Jones,* and *Illinois Railroad and Coal Co.* v. *Ogle,* and the *Maryland case.* After considering those cases, the court, in the principal case, say : "A careful examination of the authorities has convinced us that there is a growing inclination amongst all courts, where it can be done, to apply the only safe and just rule in actions for damages, whether *ex contractu* or *ex delicto,* and that is to give the injured party as near compensation as the imperfections of human tribunals will permit."

Messrs. HAY & KNISPEL, and Mr. E. L. THOMAS, for the appellee :

The cases principally relied upon by counsel for appellant— *Wood* v. *Moonwood,* 43 E. C. L. 310, *Forsythe* v. *Wells,* 41 Pa. 291, and *Winchester* v. *Craig,* Michigan,—were fully considered by this court and discussed in the opinion in the *David Ogle case.* The question of the measure of damages for coal taken by mistake we think finally settled by this court, and we refrain from following appellant in that branch of the case.

Where the trespass is wilful, punitive damages may be awarded. *Bull* v. *Griswold,* 19 Ill. 631 ; *McNaimara* v. *King,* 2 Gilm. 432; *Illinois and St. Louis Railroad and Coal Co.* v. *Cobb,* 68 Ill. 53; *Johnston* v. *Camp,* 51 id. 229 ; *Cutter* v. *Smith,* 57 id. 252.

In an action of trespass, the jury may give exemplary damages against a defendant who wilfully damages plaintiff's property, notwithstanding the defendant may have made an entry in good faith, supposing he had a good right to do so. *Best* v. *Allen,* 30 Ill. 30.

In further aggravation of the injury done Ogle, the appellant, when it saw fit to retrace its steps, took away the pillars supporting the surface of the land, closed up the rooms, suffered the mine to be filled up with water and choked with dirt, suffered the mine to fall in, so that no accurate survey could

be made, nor the amount of coal wrongfully taken accurately determined.

The maxim *"Omnia præsumuntur contra spoliatorem"* applies. Brooms' Legal Maxims, 843; 2 Best on Evidence, 411; *Winchell* v. *Edwards*, 57 Ill. 41.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was an action of trespass *quare clausum fregit,* brought to the January term, 1873, of the St. Clair county circuit court by Joseph Ogle, against the Illinois and St. Louis Railroad and Coal Company. At the September term, 1876, of the court, there was a trial of the cause, which resulted in a judgment in favor of plaintiff for $13,000, from which judgment the company appealed to this court.

The record shows that the parties to the suit were respectively owners of certain coal fields which lay adjoining each other, and that appellant had, for many years previous to the commencement of the suit, been engaged in mining and removing the coal from its own lands.

And it further appears, that appellant, in prosecuting its mining operations, crossed the dividing line and passed over into the coal field of appellee and mined and removed therefrom a large quantity of coal. And for this invasion of appellee's rights the above action was brought, with the result already stated.

There is no controversy as to the fact of the trespass by appellant,—that is conceded. But it is claimed that the damages allowed by the jury are excessive, and that the court, for that reason, should have granted a new trial.

It is also further claimed, that the rule governing the assessment of damages in cases of this character, as laid down in *Robertson* v. *Jones,* 71 Ill. 405, and approved and followed in *Illinois and St. Louis Railroad and Coal Co.* v. *Ogle,* 82 id. 627, after an elaborate argument and an extended review of the authorities, is not sound, and that the court below therefore erred in following it. And this court is now asked to

again reconsider those cases and the authorities upon which they rest, to abrogate the rule in question which has been established by them, and to adopt another in its stead which is radically variant from it.

With respect to the question of damages, so far as it depends upon the quantity of coal taken from appellee's land, it may be remarked that the evidence is contradictory and can not be reconciled, and the estimates of the witnesses are wide apart. If the estimate made by appellee's engineer was correct, then the verdict of the jury was too small. If, on the other hand, the estimates made by appellant's engineers are correct, then the verdict, allowing nothing for punitive damages, was entirely too large. It is doubtful, to say the least of it, when we take into consideration some important facts bearing upon the question which were testified to by other witnesses, whether either of these estimates was correct. At any rate it is evident that the jury must have come to this conclusion.

We have examined the evidence in this case with some degree of care, so as to enable us to form a proper estimate of its merits and intelligently pass upon the questions submitted for our determination.

The trespass, as already stated, is conceded, and appellant's counsel admit that under the rule adopted by this court for the assessment of damages, the plaintiff was entitled to at least $2312.40. It is, moreover, evident that this trespass was not the result of mere mistake, but was knowingly and wilfully done. This clearly appears from the testimony of Marion and Jones, and it is not at all contradicted by any one. This being so, the jury were warranted in giving punitive damages. So far, there is no doubt about the case.

If tested by the number of witnesses, the weight of evidence with respect to the amount of coal taken is certainly with appellant. While the number of witnesses examined is a consideration always to be looked to, yet, that of itself is by no means to be regarded as a controling one. There are many other equally important tests of truth, chief of which is that of a cross-ex-

amination in the presence of the court and jury.   The witness' manner, demeanor and bearing upon the stand,—his replies, whether frank and open or reluctant and evasive,—his manner of expressing himself, whether moderate, dignified and respectful on the one hand, or extravagant, impertinent and reckless on the other,—his intelligence and means of information with respect to the matters of which he speaks,—his relation to the parties to the suit,—his interest in the question between them, or in the subject matter of the suit,—are always of vital importance in determining to what, if any, credit the witness is entitled.

These considerations are essential elements in every judicial investigation through the instrumentality of witnesses.   They are among the great lights and aids that enable the court and jury to arrive at the truth.   But, unfortunately, in the nature of things, most of these tests of truth that are such powerful aids to the court and jury that try a cause, can not be preserved in or transcribed upon the record of it, and by reason thereof they are wholly lost to a superior court when reviewing the testimony of the witness who testified in it.   For this reason it has become a well settled rule, that courts of error will not reverse a case merely because, in the opinion of such court, as appears from the record, the weight of evidence was against the verdict.

One of the great objects of a jury trial at all is to settle and determine questions between witnesses whose statements are contradictory and irreconcilable.

In *Chicago and Rock Island Railroad Co.* v. *McKean*, 40 Ill. 218, this court said:   "The weight of evidence does not depend upon, nor is it made up of, numbers of witnesses, but of the matter sworn to, and the position of the witnesses and their capacity to hear or see, as the case may be, are elements to be taken into consideration in weighing the testimony."

In *Bishop* v. *Busse et al.* 69 Ill. 403, it was said:   "The question, whether a verdict should be sustained or set aside as to the finding of the facts, does not depend on the number of

witnesses testifying on each side of the disputed points. The number of witnesses may be on one side, while the decided weight of evidence may be on the other."

In *Hubbard* v. *Rankin*, 71 Ill. 129, it was said: "It does not follow, from the fact that two witnesses to the same transaction testify in direct opposition to each other, there is no preponderance of evidence in favor of the one holding the affirmative of the issue, *as such a rule would rob the jury of their peculiar province of judging of the credibility of witnesses.*"

Again, in *Chicago, Burlington and Quincy Railroad Co.* v. *Dickson*, 63 Ill. 151, it is said: "In determining an issue of fact it is not mere numbers of witnesses that should control, but a variety of considerations enter into the determination as to where the weight of evidence lies; of these are the intelligence of the witnesses, their fairness and means of information, and corroborating circumstances." And to the same effect many other cases might be cited, but we deem it unnecessary to do so.

This court has often had occasion to state the general rules and principles by which courts should be governed in refusing or granting new trials; and has also frequently had occasion to determine under what circumstances it would be error to refuse one on the ground that the verdict is not supported by the evidence. It has often been said by this court, where the verdict is *manifestly* against the evidence or weight of the evidence, a new trial should be granted. *Schwab* v. *Gingerick*, 13 Ill. 697; *Allen* v. *Smith et al.* 3 Scam. 97; *Scott* v. *Blumb*, 2 Gilm. 595.

In *Reynolds* v. *Lambert*, 69 Ill. 495, it is said: "It is the settled rule, to reverse where there is no evidence to sustain the verdict, or where the verdict is manifestly against the weight of the evidence."

In *Illinois Central Railroad Co.* v. *Chambers*, 71 Ill. 519, it is said: "A decision so clearly against the preponderance of evidence as to amount to a perversion of justice will be set aside."

In *Toledo, Wabash and Western Railway Co.* v. *Moore,* 77 Ill. 217, it is said : " Where there is evidence from which the jury could properly find their verdict, it will not be disturbed, though the evidence may, in the opinion of the Supreme Court, justify a different result."

In *Wiggins Ferry Company* v. *Higgins,* 72 Ill. 517, it is said : " Though the evidence may not be entirely satisfactory, yet if it tends to sustain the issue, and the circuit judge, who saw the witnesses on the stand, and had facilities for determining the weight of the evidence which the Supreme Court does not possess, is satisfied with the verdict and refuses to set it aside, the Supreme Court will not disturb it."

In *Kightlinger* v. *Egan,* 75 Ill. 141, it is said : " Where the testimony is conflicting, and much of it is irreconcilable upon the main question in issue, the verdict of the jury, when they are properly instructed as to the law of the case, must be regarded as settling the controverted facts." To the same effect are the cases of *Simons* v. *Waldron,* 70 Ill. 281, and *Connelly* v. *The People,* 81 id. 379.

Again, it is said, in *Chapman* v. *Burt,* 77 Ill. 337, "that where the evidence is contradictory, conflicting and irreconcilable, and that produced by the party in whose favor the jury find, when considered alone and independent of the opposing testimony, clearly sustains the verdict, it will not be disturbed, unless it is manifest the jury have mistaken the evidence or have been governed by passion or prejudice."

Now, viewing the case before us in the light of the cases we have just adverted to, and especially the one last cited, it is manifest that it ought not to be reversed on the ground that the verdict is not supported by the evidence. There is evidently no pretence for saying—and indeed it is not claimed—that the evidence of appellee, when considered without reference to defendant's evidence, does not sustain the verdict; and there certainly is equally as little pretence for claiming that the evidence in the case was misunderstood, or that the jury were actuated by passion or prejudice, as there is for saying

that the evidence of appellee, when considered without regard to appellant's evidence, does not sustain the verdict. We are clearly of opinion, therefore, that there was no error in refusing to grant a new trial.

With respect to the rule adopted by this court for the assessment of damages in cases of this character, we still see no sufficient reason for changing it, even if it could be considered any longer an open question. We have read with much pleasure, and trust some profit, the brief, and very able argument of the learned counsel for appellant on the question, and while we are not convinced by it, and decline to reconsider the cases decided by this court establishing the rule, or the authorities upon which they rest, yet we deem it proper to say that the more we have considered the rule and the reasons upon which it is founded, the more confident we are that it rests on sound legal principles and is suggested by a wise and just policy. The rule contended for by appellant and adopted by some other courts would certainly work a great hardship in many cases that might be supposed; and it would, under some circumstances, be a strong temptation to one who happened to have but little veneration for the laws of *meum et tuum*, to trespass upon the rights of others.

It would in many cases, we apprehend, be quite easy to pass the line into another's coal mine, as was done in this case, and trespass there for months, or possibly years, without the owner knowing anything about it. The trespasser might speculate on the chances of never being detected, and at the same time console himself with the reflection that if discovered he might possibly escape through some loophole in legal proceedings, and if the worst came to worst, he would only have to pay what the coal was worth in the bank, and by pulling down the props and allowing the entries and rooms to tumble in, a scientific engineer might be able to make such estimates as would greatly reduce the actual amount of coal taken.

Again, one might have a coal field and not desire to have it mined for him just at the time it suited the convenience of his neighbor to do so. From certain temporary extrinsic causes the price might be very low, so that the owner would prefer keeping the coal till the market went up; yet perhaps its very cheapness might be a temptation to the trespasser to take it. It is believed that there are few if any instances with us where the owners of coal mines cross their own lines without knowing it; yet it might in some cases be difficult to prove that the taking was with a full knowledge of the owner's rights, and failing in that, all the owner could get under the rule contended for would be a half or third of a cent a bushel.

The rule which we have adopted will have a wholesome effect upon all persons operating coal mines. It will have a tendency to prevent wilful trespasses on other persons' rights. To change the rule, and adopt the one proposed in its stead, would not only be unwise on the ground of public policy, but would directly mar the beauty and in part destroy the harmony, logic and consistency that exist in that great body of common law principles and maxims that underlie and constitute a part of the jurisprudence of our State.

The rule which we have adopted is not one of our own manufacture. It is founded on legal principles and maxims as old as the common law itself. Among them may be mentioned the following: A party shall not be permitted to take advantage of his own wrong; he can not acquire title to a chattel by a mere tortious act; that so long as a chattel can be identified, however much its value may be increased by the labor of a wrong-doer, the right of property is unchanged, and the real owner may reclaim it or recover its full value from the wrongful taker. When a portion of the realty is by a trespass severed from land, and is thereby converted into a chattel, if one other than the trespasser takes it, it is admitted he is liable for its full value in its severed condition. So in trespass *quare clausum fregit,* the defendant is always liable for the full value of any chattel he may carry away at the time

of the unlawful entry. And, finally, one can not make himself the creditor of another without the latter's consent.

Now, it seems to us utterly impossible to harmonize these acknowledged principles of law with the rule contended for. Let us see: A unlawfully enters the coal mine of B, and deliberately separates from the coal in its unmined and natural state one hundred bushels of coal. The coal before separation is worth just fifty cents. When separated it is worth just five dollars. Now, when the coal is thus mined and ready for removal to market, to whom does it belong? All concede that it belongs to B, the owner of the mine. To say that A had any interest in it whatever would be to hold that one could, in violation of the principle above stated, acquire a right in another's chattel by his own tortious act, or in other words could take advantage of his own wrong. Suppose when the coal is thus mined, C, a third party, in the absence of A, enters the mine and carries the hundred bushels of coal away without authority from B. In such case it is quite evident that A would have no right of action against C for taking the coal, and it is equally certain that B would have such right of action, and that he could recover five dollars, the full value of the coal. This but shows that A really has no interest in the coal, notwithstanding he enhanced its value ten fold by mining it. Now if C, in the case above supposed, is bound to pay five dollars as damages for the trespass, being the full value of the coal, and A, in the event he got away with it himself, would be required to pay only fifty cents for taking the same coal, upon what principle or reason would this difference in the measure of damages rest? Not on the form of action, for in either case we will suppose the action to be trespass *quare clausum fregit*. There is evidently no difference in the circumstances of the two cases, except that A incurred the expense of digging the coal, and C found it already dug for him. Now if A, in the assessment of damages, is required to pay only fifty cents, does he not in effect make B, the owner,

pay him for his labor—his tortious act? Or, in other words, he makes himself B's creditor without the latter's consent.

If the owner bring trover for coal wrongfully taken from his mines, it is conceded that the measure of damages is the value of the coal in its state or condition as a chattel, without any deduction for mining; and in such case, where the trespasser has sold the coal and converted it into money, the owner of the mine may waive the tort and recover the full amount of money received for the coal in an action of assumpsit.

If a wrong-doer enters the premises of another and takes his horse from the stable, on a count for unlawfully breaking the close of the plaintiff, setting up by way of aggravation of damages the unlawful taking of the horse, the owner may recover the full value of the horse, without any deductions on account of expenses incurred in removing locks from the stable or capturing the horse. These familiar principles are all in harmony with the rule we have adopted. They are not in harmony with the other.

Perceiving no error in the record, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCOTT, dissenting: I can not concur in this decision. Under any rule that can be adopted for ascertaining the measure of damages, I am of opinion the damages found are so excessive the judgment, for that reason, ought to be reversed.