## UNITED STATES *v.* HEILNER and another.

(*Circuit Court, D. Oregon.*   January 15, 1886.)

1. MEASURE OF DAMAGES IN ACTION FOR THE CONVERSION OF TIMBER.
      An innocent purchaser, from a willful trespasser, of timber cut on the public land, is liable for the value of the timber at the date of such purchase, including the value of all labor and expense which said trespasser had then bestowed upon it

2. CASE IN JUDGMENT.
      H. purchased 50,000 feet of lumber at the mill of E., made from timber willfully cut from the public land by the latter, without the knowledge of H., and hauled the same to Baker City, a distance of 20 miles, at a cost of $5 per thousand, where he disposed of it at $15 per thousand. *Held,* that in an action by the United States to recover damages for the conversion of said timber, the true measure thereof was the value of the lumber at the mill.

3. NEW TRIAL—INTEREST ON VALUE OF PROPERTY CONVERTED.
      On the trial it was taken for granted that the lumber was delivered to the defendant at Baker City, and the jury took its value there as the measure of damages; but on a motion for a new trial, it being admitted that the defendant paid for hauling the lumber to that place, and no objection being made to the omission to prove that fact on the trial, a new trial was granted the defendant, unless the plaintiff would remit the cost of hauling, $250, less $120, the amount of three years' interest on the value of the lumber at the mill, which the plaintiff had omitted to claim on the trial.

Action to Recover Damages for Conversion of Timber.

*James F. Watson,* for plaintiff.

*Lewis L. McArthur,* for defendant.

DEADY, J.   This action was brought January 2, 1884, to recover damages from the defendants for the wrongful taking and cutting into boards of 400,000 feet of logs, belonging to the plaintiff, and wrongfully converting the same to their own use.   It is alleged in the complaint that between June 1, 1881, and the commencement of this action, one O. T. Elliott wrongfully cut and removed from section 17, in township 7 S., of range 38 E. of the Wallamet meridian,—the same being then unsurveyed public land,—400,000 feet of timber, made into saw-logs, of the value of $800, to a steam saw-mill in Baker county, Oregon, with intent to dispose of the same; that the defendants, well knowing the premises, took possession of said saw-logs, then and there being of the value of $1,200, and wrongfully cut the same on said mill into boards, of the value of $4,800, and did then and there convert the same to their own use, to the damage of the plaintiff $4,800.

On June 2, 1884, the defendants answered separately, denying, substantially, any knowledge of the allegations of the complaint relative to Elliott's cutting and removing timber from the public land; and admitting that on and since October 1, 1882, they each had an interest in the steam saw-mill situate on or near the section aforesaid, but that about said date it was removed to land belonging to the defendants; and denying that they were in any way interested in the

running of said mill between the time of acquiring said interests therein and its removal, or that they ever took possession of said logs, or sawed the same into lumber, or converted the same to their use.

On the trial it appeared that in April, 1882, the defendant Heilner took a conveyance of the mill in question,—it being then located on the unsurveyed public land, and on or near this section 17, and the same day leased it to said Elliott for so much lumber,—the transaction being, in fact, a mere security for the delivery to Heilner of lumber in payment of money theretofore advanced by him to Elliott; that in the summer of 1882 there was received, under said arrangement, by Heilner, at Baker City, from forty to sixty thousand feet of lumber, made from logs cut and taken from said section 17 by said Elliott, which was worth at the mill about $10 per thousand, and at Baker City, a distance of 20 miles therefrom, $15 per thousand; and that, although the defendants were then members of a mercantile firm at Baker City, the defendant Ottenheimer had no interest in the transaction. The jury found for the defendant Ottenheimer and against the defendant Heilner, and assessed the plaintiff's damages by reason of the premises at $750.

Afterwards, counsel for Heilner made a motion for new trial, on the ground that the lumber was delivered by Elliott and received by the defendant at the mill, and the latter paid the cost of hauling the same to Baker City, which was $5 per thousand. This fact did not appear on the trial, but the case was given to the jury on the supposition that Elliott delivered the lumber at Baker City. On this hypothesis, the jury, taking the mean of the evidence—50,000 feet—as the amount of lumber received by Heilner, and its value at Baker City,—$15 per thousand,—properly assessed the plaintiff's damages at $750. But the district attorney now concedes that the defendant did receive the lumber at the mill, and paid for hauling it to Baker City, where, presumably, it was disposed of by him, and finally converted to his own use. But he also contends that, Elliott being a willful trespasser, the defendant is not only liable for the value of the timber at the mill, including the value of the labor put upon it by Elliott, but for the full value of the property at any time after it came into his possession, and before this suit was brought for the conversion, which includes, of course, the cost of transportation from the mill to Baker City.

The rule for ascertaining the damages in such cases has been a vexed question; the volume, if not the weight, of authority being that the value of the property at the time of conversion or appropriation to the use of the defendant, with interest thereon, constitutes the measure of damages. Field, Dam. § 792. But this includes any accession of value between the taking and conversion.

Blackstone (book 2, 404) says that the rule of the Roman law had been copied and adopted by Bracton, and confirmed by the courts of England, that if any property receives "an accession by natural or

v.26F.no.2—6

artificial means, as by the growth of vegetables, the pregnancy of animals, the embroidering of cloth, or the conversion of wood or metal into vessels and utensils, the original owner of the thing was entitled, by his right of possession, to the property of it under such its state of improvement; but if the thing itself, by such operation, was changed into a different species, as by making wine, oil, or bread out of another's grapes, olives, or wheat, it belonged to the new operator, who was only to make satisfaction to the former proprietor for the materials which he had so converted."

And in *Silsbury* v. *McCoon*, 3 N. Y. 379, the court went further, and held that when the taking was willfully wrong, it matters not that the species has been changed, the wrong-doer acquires no property in the article produced so long as it can be shown that it was made from the material converted, as when corn is made into whisky.

But the rule laid down in *Wooden-ware Company* v. *U. S.*, 106 U. S. 432, S. C. 1 Sup. Ct. Rep. 398, is of final authority in this court. In that case it was held that in an action to recover damages for timber cut and carried away from the public land, the defendant, if a willful trespasser, is liable for the full value of the property at the time of commencing the suit, without any deduction for any labor or expense bestowed thereon; but if he is an unintentional or mistaken trespasser, he is only liable for the value of the timber at the time of conversion, less the value of any such labor or expense; and that a purchaser from a willful trespasser, without notice of the wrong or the true ownership of the property, is only liable for the value thereof at the time of such purchase, and not for any labor or expense he may bestow upon it thereafter.

It is admitted that the defendant purchased this lumber from a willful trespasser, and is therefore liable to the United States at least for the full value of the same at the time of such purchase. He bought and received the lumber at the mill, where it was worth $10 per thousand. If he purchased without notice that the property belonged to the United States, he is not liable for any additional value he may have put on it, before the suit was brought, by hauling it to Baker City; but if he had such notice, he is so liable. As to the knowledge of the defendant, there is no direct evidence, and the circumstances do not warrant any satisfactory inference on the subject.

The objection that this point ought to have been made on the trial was not made by the district attorney, and may be considered waived. Probably he thought the defendant entitled to favorable consideration in this respect for the candid and truthful manner in which he testified when called as a witness by the United States to make out a case against himself, which is a matter of rather rare occurrence in cases of this kind, so far as my observation goes.

Assuming, then, that the defendant was not liable for the value of the lumber at Baker City, but only at the mill, the verdict should not have been for more than $500.

But, while revising this verdict, there is another circumstance that ought to be considered. The United States was entitled to interest on the value of this lumber from the time of the conversion, in the summer or fall of 1882, until the finding of the verdict, November 27, 1885. No claim for interest was made on the trial, or the court would have instructed the jury to allow the same. But, under the circumstances, I think it nothing more than right to provide that the interest which the plaintiff was entitled to recover be deducted from the $250, and the verdict considered as excessive only for the remainder. Three years' interest at 8 per centum per annum on $500 is $120, which, being deducted from $250, leaves a remainder of $130.

The order of the court will be that the verdict be set aside, and the cause retried, unless the plaintiff, within 10 days hereof, enters a *remittitur* for the amount of $130.