## AMERICAN SAND AND GRAVEL COMPANY v. SPENCER.

[No. 8,066. Filed December 12, 1913. Rehearing denied February 20, 1914.]

1. TRESPASS.— *Trespass to Land.*— *"Innocent Trespasser".*— *"Wilful Trespasser".*—One who unawfully, but inadvertently or unintentionally, and in the honest and reasonable belief that he is exercising his own right, enters upon the lands of another and removes therefrom sand or other minerals, or cuts and removes therefrom growing timber, is an "innocent trespasser"; and one who unlawfully enters, recklessly or wilfully, or with an actual intent to do so, and removes any such substance is a "wilful trespasser". p. 527.

2. APPEAL.—*Review.*—*Findings.*—In reviewing the action of the trial court for the purpose of determining whether there was

error in assessing the amount of damages, only such evidence as tends to sustain the finding of the trial court can be considered. p. 528.

3.  TRESPASS.—*Wilful Trespass.—Evidence.*—Evidence that defendant entered upon the land of plaintiff, without plaintiff's consent, and removed sand therefrom, knowing at the time that the land belonged to plaintiff, was sufficient to support a finding of wilful trespass, though defendant's evidence showed that notwithstanding its knowledge of the facts it believed it had a right to remove such sand, since knowledge of the facts requires a presumption that the law applicable thereto is also known.  p. 528.

4.  TRESPASS.—*Trespass to Land.—Trespass De Bonis Asportatis.*— An action to recover the value as personal property of sand taken and removed from plaintiff's land by defendant, where no damages were sought for injury to the land caused by defendant's acts, is in the nature of trespass *de bonis asportatis*, rather than trespass *quare clausum fregit.*  p. 529.

5.  TRESPASS.—*Trespass De Bonis Asportatis.—Innocent Trespass. —Measure of Damages.*—In an action to recover the value of mineral substance wrongfully taken from the land of plaintiff, where the trespass was innocent, and trespass to the land, as such, is not involved, the proper measure of damages is the value of the substance at the time and place where the trespasser converted it to his own use, less the amount such value was enhanced by his labor and expense.  p. 529.

6.  TRESPASS.—*Trespass De Bonis Asportatis.—Wilful Trespass.— Measure of Damages.*—In an action to recover the value of sand wrongfully taken from the land of plaintiff, where trespass to the land, as such, is not involved, and the trespass complained of is within the class denominated as wilful, the measure of damages is the value of the sand at the time and place of the conversion, or the highest market price at any time between the severance and the conversion, deducting nothing on account of labor or expense.  p. 530.

7.  TRESPASS.—*Trespass De Bonis Asportatis.—Time and Place of Conversion.*—The time and place of the conversion of any substance, such as sand or mineral, taken from the land of another, vary with the circumstances of each case, and may be the time and place of demand, or of sale, or of the consummation of the conversion by the removal of the substance from the owner's land. p. 531.

8.  TRESPASS.—*Excessive Damages.—Trespass De Bonis Asportatis. —*In an action for the value of sand wilfully taken from plaintiff's land without her consent, under evidence showing that it was worth fifteen cents a cubic yard on cars at the pit, that the cost of loading was from four to five cents per cubic yard, that

the freight to the place of sale averaged twenty cents per cubic yard, that it sold for from thirty-five to fifty cents per cubic yard, and that at least 31,717 cubic yards of sand were thus taken and sold by defendant, a judgment for $3,698.15 was not excessive.  p. 532.

9.  DAMAGES.— *Exemplary Damages.— Determination.*—Exemplary damages is a sum assessed in addition to compensatory damages, and the amount that may be assessed as exemplary damages rests in the sound discretion of the jury, or of the court where the court tries the facts.  p. 532.

From Lake Circuit Court; *Willis C. McMahan,* Judge.

Action by Eva Spencer against the American Sand and Gravel Company and another. From a judgment against it, the American Sand and Gravel Company appeals. *Affirmed.*

*Edwin C. Crawford,* for appellant.

*Harris, Bretsch & Ressler, Frank B. Pattee* and *Louis B. Ewbank,* for appellee.

CALDWELL, J.—It appears from the record that from June 1, to August 8, 1908, William Tipton was the owner of fifty acres of land, described in the complaint, situate near the city of Gary, in Lake County, Indiana. At the last named date, William Tipton died intestate, leaving as his only heirs at law, his widow Melissa Tipton and his daughter, the appellee, Eva Spencer. Melissa Tipton died intestate September 21, 1908, leaving appellee as her only heir at law, who thereupon became sole owner of the lands, and so continued to the time of the trial. The land contained extensive deposits of sand. Originally three suits were filed in the court below against appellant and The Garden City Sand and Gravel Company, one by the administrator of the estate of William Tipton, one by the administrator of the estate of Melissa Tipton, and one by appellee, to recover for sand alleged to have been wrongfully taken by the defendants, within the respective periods when William Tipton owned the land, and when Melissa Tipton and appellee owned it in common, and when appellee was sole owner

thereof respectively. It being conceded that appellee was the beneficial owner of each of the claims sued on, the three actions were consolidated by agreement of the parties, and appellee filed a new complaint in the consolidated cause, on which complaint, the trial was had. By agreement, it was stipulated of record that if any judgment should be rendered in the consolidated action against defendants, it should be *in solido* in favor of appellee.

The material averments of the complaint are in substance as follows: That defendants are engaged in the business of buying and selling sand and gravel; that appellee between certain specified dates owned a fifty-acre tract of land, described in the complaint; that at divers times between said times "the exact times being unknown to this plaintiff, said defendants wrongfully broke and entered said land of the plaintiff and wrongfuly took and carried away large quantities of sand and gravel from said real estate of this plaintiff, amounting to 1,000 or more cars, of the value of $20,000; that said acts of trespass were committed without the consent of the plaintiff, and without authority by law; that defendants well knew at the time of so entering upon plaintiff's real estate that they were upon the same without authority; that they had endeavored to purchase said land, but failed, but notwithstanding all this, they unlawfully, intentionally and wilfully entered said premises and took and carried away as above averred the sand and gravel of this plaintiff, to her damage as averred." Defendants filed an answer in general denial. Trial by the court, without a jury. Finding and judgment for costs in favor of the defendant, The Garden City Sand and Gravel Company, and in favor of appellee, against appellant in the sum of $3,698.15, from which appellant prosecutes this appeal. The sole error assigned is the overruling of the motion for a new trial, which motion presents the single question of whether the damages assessed are excessive.

Under the averments of the complaint, appellee seeks

to recover as damages only the value of the sand and gravel taken and removed, as measured by the rules of law applicable to such a case as is made by the complaint. There is no averment of any consequent injury to the land, as such, and appellee does not seek to recover for any such injury.

In cases where one person unlawfully enters upon the land of another person, and mines and removes therefrom coal, stone, sand or other minerals, or cuts and re-1. moves therefrom growing timber, and converts such material or substance to his own use, the circumstances may be such as that the person who so enters the lands of another may thereby become either an innocent, inadvertent trespasser, or a wilful trespasser. If such a person enters his neighbor's land unlawfully, but inadvertently or unintentionally, or in the honest, reasonable belief that he is exercising his own right, and in such a spirit displaces and removes therefrom any of said substances or any like substance, he is classed as an innocent trespasser; but where he enters such land, not only unlawfully, but also recklessly or wilfully, or with an actual intent to do so, and in such spirit displaces and removes any substance aforesaid, he is classed as a wilful trespasser. The complaint charges defendants with a wilful trespass. *Sunnyside Coal, etc., Co.* v. *Reitz* (1896), 14 Ind. App. 478, 497, 39 N. E. 541, 43 N. E. 46; *Resurrection Gold Min. Co.* v. *Fortune Gold Min. Co.* (1904), 129 Fed. 668, 679, 64 C. C. A. 180; 27 Cyc. 639.

In ascertaining the correct measure of damages in this case, the trial court presumably first determined whether appellant was a wilful trespasser. The amount of the judgment indicates that the court found against appellant on that proposition. That there was a trespass is not controverted. The contest wages around the question of its nature. It became necessary for the trial court to ascertain the facts of the trespass, and from such facts to determine whether it was innocent or wilful. Such question is so related to the

rules by which the damages are measured that we are required to review the trial court's action in this respect in order that we may determine whether there was any error in assessing the amount of damages. In so reviewing the trial court's action, only the evidence that tends to sustain the finding of the trial court can be considered by this court. There was evidence to the following effect: during the period in which appellant was removing the sand, William and Melissa Tipton, until they died as aforesaid, and appellee throughout the period, lived at Kenosha, Wisconsin. There was evidence that they did not know that appellant was mining and removing the sand. Appellee first learned the fact about July 1, 1909, and at once notified appellant to cease operations and to remove its equipment from the land. Appellant admitted receiving such notice, and while it did not promptly vacate the land, claims that thereafter it took no more of the sand. Appellant negotiated with William Tipton in his lifetime for the right to take sand, and with appellee thereafter, but the parties arrived at no agreement to that end. There was evidence that appellant, through its officers and agents knew of the death of William Tipton soon after that event occurred. While William Tipton was living, but comparatively a small amount of sand was taken, and this without any agreement that it might be taken. No sand was taken in the three months following the death of William Tipton. Thereafter, and up to July 1, 1909, appellant took 740 car loads, 579 of which were taken before there were any negotiations with the heirs of William Tipton, and 161 after negotiations had been opened and failed. Appellant admits that up to July 1, 1909, it took 809 car loads, amounting to 31,717 cubic yards. There was some evidence that appellant took 626 cubic yards after July 1, 1909, but this was denied by appellant. Appellant knew at all times that it was taking the sand from the Tipton land, and intended to take it from the land, but through

its officers claimed that it believed that it had the right to do so. Appellant was fully informed as to the facts, and is presumed to know the law applicable thereto. The evidence is sufficient to sustain a finding that appellant wilfully took the sand, and that in so doing it was a wilful and intentional trespasser. *Sunnyside Coal, etc., Co.* v. *Reitz, supra; Resurrection Gold Min. Co.* v. *Fortune Gold Min. Co., supra; Whiting* v. *Adams* (1894), 66 Vt. 679, 30 Atl. 32, 25 L. R. A. 598, 44 Am. St. 875; 27 Cyc. 639.

We next proceed to determine the rule by which the damages must be assessed. It should be kept in mind that this action, under the allegations of the complaint is 4. in the nature of trespass *de bonis asportatis,* rather than trespass *quare clausum fregit.* Any damages to the land as such, caused by the removal of the sand, are waived or ignored, under the allegations of the complaint. Appellee seeks to recover only the value of the sand as such, when measured by the rules of law that must be applied to a case of this kind. The sand in its natural position on the land was a part of the real estate. When mined and removed from the place, it became personal property, and appellee seeks to recover its value as personal property. Our further discussion of this case must be construed with the foregoing.

It is sometimes said that the measure of damage in a case of what we have denominated an innocent trespass—that is, where one wrongfully takes a mineral substance 5. from the lands of another, through inadvertence or mistake, or in the honest, reasonable belief that he is acting within his legal rights—is the value of such substance *in situ.* It would seem, however, that such a rule should be applied to a case where the action involves a trespass to the land, as such, rather than to a case involving only the value of the product taken and removed. The rule is otherwise stated to the effect that the measure of

damages is the value of the substance at the time and place
where the trespasser converts it to his own use, less what
the labor and expense of the trespasser has added to such
value. The latter statement of the rule seems more nearly
to conform to the nature of the action under discussion,
where the trespass is an innocent one, and such seems to
be the rule in this State. *Sunnyside Coal, etc., Co.* v. *Reitz,
supra; White* v. *Yawkey* (1895), 108 Ala. 270, 19 South.
360, 32 L. R. A. 199, 54 Am. St. 159; *Bolles Woodenware
Co.* v. *United States* (1882), 106 U. S. 432, 1 Sup. Ct. 398,
27 L. Ed. 230; *Resurrection Gold Min. Co.* v. *Fortune Gold
Min. Co., supra; United States* v. *Ute Coal & Coke Co.*
(1907), 158 Fed. 20, 85 C. C. A. 302; *Ball & Bro. Lumber
Co.* v. *Simms Lumber Co.* (1908), 121 La. 627, 46 South.
674, 18 L. R. A. (N. S.) 244; *Gaskins* v. *Davis* (1894), 115
N. C. 85, 20 S. E. 188, 25 L. R. A. 813, 44 Am. St. 439;
*Illinois, etc., R. Co.* v. *Ogle* (1876), 82 Ill. 627, 25 Am. Rep.
342; *United States* v. *Homestake Min. Co.* (1892), 117 Fed.
481, 54 C. C. A. 303; *United States* v. *Northern Pac. R. Co.*
(1895), 67 Fed. 890; *Bailey* v. *Chicago, etc., R. Co.* (1893),
19 L. R. A. 653, note.

In a case of what we have denominated a wilful trespass,
that is, where one recklessly, wilfully or intentionally takes
a mineral substance from the lands of another—the
6. courts are not in entire accord, respecting the rule
for measuring the damages. Thus, some courts meas-
ure the damages by the value of the substance as personal
property, when it first becomes such by mining or severing,
deducting nothing for the labor and expense of mining or
severing. This rule has been applied to coal stacked or
loaded on cars at the mouth of a mine, but deducting the
expense of transporting to the mouth of such mine or to
such cars, since such expense was incurred after the coal
had become personal property. *Donovan* v. *Consolidated
Coal Co.* (1900), 187 Ill. 28, 58 N. E. 290, 79 Am. St. 206;
*Illinois, etc., R. Co.* v. *Ogle, supra; Illinois, etc., R. Co.* v.

*Ogle* (1879), 92 Ill. 353; *Omaha, etc., Refining Co.* v. *Tabor* (1889), 13 Colo. 41, 21 Pac. 925, 5 L. R. A. 236, 16 Am. St. 185. A more stringent rule has been applied, and such seems to be the rule in this State, to the effect that where the trespass is wilfully or intentionally committed, the damages should be measured by the value of the substance severed or removed at the time and place of the conversion, or the highest market price of such substance at any time between the severance and the conversion, deducting nothing on account of labor and expense, and this rule has been applied where the property has been transported to a distant point, and is there finally converted to the use of the trespasser. *Sunnyside Coal, etc., Co.* v. *Reitz, supra; Ellis* v. *Wire* (1870), 33 Ind. 127, 5 Am. Rep. 189; *Everson* v. *Seller* (1886), 105 Ind. 266, 4 N. E. 854; *Ayers* v. *Hobbs* (1908), 41 Ind. App. 576, 84 N. E. 554; *Windstanley* v. *Second Nat. Bank* (1895), 13 Ind. App. 544, 41 N. E. 956; *Resurrection Gold Min. Co.* v. *Fortune Gold Min. Co., supra; Bolles Woodenware Co.* v. *United States, supra; Meloon* v. *Read* (1905), 73 N. H. 153, 59 Atl. 946; *Central Coal, etc., Co.* v. *Henry Shoe Co.* (1901), 69 Ark. 302, 63 S. W. 49; *Ball & Bro. Lumber Co.* v. *Simms Lumber Co., supra; United States* v. *Heilner* (1886), 26 Fed. 80; *Bailey* v. *Chicago, etc., R. Co.* (1893), 3 S. Dak. 531.

The time and place of the conversion vary with the particular circumstances of each case. Thus, the time and place of demand, or of sale, or of the consummation 7. of the conversion, by the removal of the substance from the owner's land are respectively held to be the time and place of conversion. *Bolles Woodenware Co.* v. *United State, supra; Mississippi River Logging Co.* v. *Page* (1897), 68 Minn. 269, 71 N. W. 4; *Whiting* v. *Adams, supra; Anderson* v. *Besser* (1902), 131 Mich. 481, 91 N. W. 737; *Winchester* v. *Craig* (1876), 33 Mich. 205; *Wright & Co.* v. *Skinner* (1894), 34 Fla. 453, 16 South. 335.

As we have said, it was admitted by appellant that it

took from the lands 31,717 cubic yards of sand. There was evidence that it took 626 cubic yards in addition.

8. The sand was loaded onto cars at the pit, by the use of a steam shovel. There was evidence that the sand was worth fifteen cents per cubic yard on the cars at the pit, and that the expense of mining and loading was four cents per cubic yard, and some evidence that it was worth five cents per cubic yard. The evidence showed that all this sand was shipped to Chicago and there sold, and that on the siding at Chicago, it was worth from thirty-five cents to fifty cents per cubic yard, and that the average value was about forty-two cents, and the freight rate from the lands to Chicago was from eighteen cents to twenty-two and one-half cents per cubic yard, or on an average of about twenty cents per cubic yard. The judgment is in the sum of $3,698.15. 31,717 cubic yards at 11 cents, adding one year's interest at six per cent, amounts to $3,698.20, or five cents in excess of the judgment. Under the mildest of the foregoing rules for measuring the damages in case of a wilful trespasser, it is evident that the judgment is not excessive.

Appellant insists that the trial court evidently assessed exemplary damages against it, and that in so doing the court erred. A sum assessed as exemplary damages

9. is a sum in addition to compensatory damages. The amount of compensatory damages in a given case is determined by recourse to rules of law for measuring damages, while the amount of exemplary damages, where such damages may be assessed, rests in the sound discretion of the jury, guided by proper instructions given by the court, or in the sound discretion of the court, where the court tries the facts. It is evident from what we have said, that we have considered the question of the amount of the judgment in this case only from the standpoint of compensatory damages.

There being no error in the record, the judgment is affirmed.

NOTE.—Reported in 103 N. E. 426. As to the measure of damages for unintentional trespass where property has been carried off premises, see 54 Am. Rep. 421. As to the measure of damages for the wrongful working of a mine, see 8 Ann. Cas. 43; Ann. Cas. 1913 A 562. See, also, under (1) 38 Cyc. 1002; (2) 3 Cyc. 360; (3) 38 Cyc. 1116; (4) 38 Cyc. 1072, 1073; (5) 38 Cyc. 1133, 1141; (6) 38 Cyc. 1133; (7) 38 Cyc. 2032; (8) 38 Cyc. 1147; (9) 13 Cyc. 105, 119.