## LEWIS ET AL. *v.* GUTHRIE.

[No. 8,933. Filed October 11, 1916.]

1. TRESPASS.—*Evidence.*—*Sufficiency.*—In an action against joint tort-feasors to recover damages for trespass to timber lands and the wrongful removal of timber therefrom, evidence as to the removal and sale of timber from plaintiff's land owing to a mistake as to boundary lines and the acquiescence by two of the defendants in an estimate of the amount of timber taken is held sufficient to sustain a verdict against such defendants, but insufficient to justify a verdict against one of the defendants where it appeared that he neither participated in, directed, nor ratified the trespass complained of. p. 10.

2. TRESPASS.—*Actions.*—*Cutting and Removal of Timber.*—*Measure of Damages.*—In an action to recover damages for the wrongful removal of timber under a complaint seeking recovery for injury to the land caused thereby, the diminution in the value of the land occasioned by cutting and removing the timber for the

most part immature, rather than the value of the timber as a severed product, was the proper measure of recovery, particularly as much young and growing timber was destroyed in felling and hauling the trees which were removed.  p. 13.

From Owen Circuit Court; *James B. Wilson,* Judge.

Action by William H. Guthrie against Charles Lewis and others.  From a judgment for plaintiff, the defendants appeal.  *Affirmed in part and reversed in part.*

*Fowler & Elliott,* for appellants.
*Willis Hickam* and *Hubert Hickam,* for appellee.

CALDWELL, C. J.—Appellee brought this action against appellants George C. Tanner, Gordon B. Tanner and Charles Lewis, and also certain other individual and corporate defendants as joint tort-feasors, to recover damages for trespass on lands.  A trial resulted in a verdict and judgment against the Tanners and Lewis for $900, the cause having been dismissed as to the other defendants at the close of the evidence.  The errors relied on for reversal are based on the overruling of appellants' joint and several motion for a new trial.

The substance of the first paragraph of complaint is as follows:  Since 1907 appellee has been the owner of 120 acres of land in Owen county.  Prior to the grievances complained of, it was covered by a growth of young timber of a number of varieties.  The Tanners were the owners of timber lands adjoining appellee's land on the west and south, upon which Lewis resided as superintendent and manager for the Tanners.  Lewis acted with the Tanners as coprincipal in committing the wrongs complained of.  The three appellants in 1911, 1912, and 1913 wrongfully and unlawfully sold certain varieties of young and growing timber on appellee's lands to the persons and corporations originally sued also as defendants, and procured them to cut and remove the same, and in so doing to destroy certain other young timber growing on appellee's land.  Prior to

the trespass, appellee's lands were worth $3,500, but by reason of the trespass, such lands were not worth more than $1,500.

The second paragraph of complaint differs from the first, in that by the former it is alleged that appellants did not know the location of the line between the two tracts, and that they negligently failed to ascertain its location, and that as a result the injury was inflicted. In addition to general denials filed by each appellant, Gordon B. Tanner answered specially in effect that he sold to one Clark certain timber to be cut and removed from Gordon's lands adjoining appellee's lands; that he caused the line between the two tracts to be surveyed and ascertained; that he and Lewis, who was Gordon's employe, directed Clark not to encroach upon appellee's lands, but that Clark disregarded his instructions, and without Gordon's knowledge, cut and removed from appellee's lands about fifty-five sawlogs of the value of $95, and also certain logs from Gordon's lands, all of which were sold by Clark, the purchaser crediting Gordon and Clark with the amount of the selling price. That the purchaser paid Gordon on the account $71.29; that $40.01 of the selling price was held by the purchaser on appellee's order; that Clark left on appellee's lands logs cut by him, which were subsequently sold for $20.79, and the money was paid to and retained by appellee; that the logs cut from both tracts by Clark were of the total value of $132.09; that Gordon sold no saw timber to any one other than Clark. The answer denies all allegations of the complaint not specifically met thereby. The special answer is silent respecting the sale of timber other than saw timber.

We have very carefully examined the evidence. We regard it as insufficient as to appellant George C. Tanner.

1. We are unable to discover that he participated in, directed, or ratified the commission of the trespass complained of, or that he received any of the fruits thereof, either in person or by agent. Our search discloses

that, in the course of the trial, his name was mentioned but twice: Once by way of excluding him from a transaction related to the trespass, and again in an agreed stipulation to the effect that Gordon B. Tanner executed a deed to him December 4; 1909, recorded October 24, 1915. The stipulation, however, is so uncertain in language that it can not be determined therefrom whether the lands described in the deed are the lands involved in this action. The deed was not read in evidence. Assuming, however, the identity of the tract described in the deed as the Tanner lands involved here, the activity of Lewis, the occupant of the latter, in the trespass and matters relating thereto is clearly shown to have been due to the direction of Gordon B. Tanner, rather than George C. Tanner. The evidence bearing on the question of the liability of appellants Gordon B. Tanner and Charles Lewis is, in substance, as follows: Since September, 1907, appellee has been the owner of a tract of timber land consisting of eighty acres, lying north and south, and a forty-acre tract lying east of the north forty acres of the first tract. In December, 1907, Gordon B. Tanner became the owner of timber lands adjoining appellee's land on the west and south. Appellee lived in California. In June, 1913, he learned that his timber was being cut and removed. He came to Indiana and, by inspection, discovered that 213 trees, consisting of poplar, walnut, ash, oak and cherry, had been cut, the most of which had been removed, and that other timber had been destroyed in felling trees, cutting out roads for the purpose of hauling timber, etc. Lewis lived on the Tanner land. Large quantities of timber were sold to various persons and corporations, to be cut and removed from the Tanner land. In some cases, it was purchased as saw timber, and in other cases to be manufactured into excelsior and handles. In some instances Gordon personally sold the timber and in other instances Lewis, by Gordon's direction, sold it. Lewis, assisted somewhat by Gordon, supervised the cutting and removal of the timber.

It was apparently the purpose of both Gordon and Lewis to sell only the timber on the Tanner land. Lewis, however, pointed out to purchasers and cutters the east line of appellee's eighty-acre tract as the line between the Tanner land and appellee's land, and directed that the timber be taken, and it was taken, up to the line as pointed out. Gordon B. Tanner subsequently ratified the acts of Lewis in this respect, and also personally pointed out to purchasers and cutters, as his east line, the east line of appellee's eighty acres. Lewis also, frequently, and Gordon, occasionally, were present while timber was being cut on appellee's land. After this controversy arose, both Gordon and Lewis contended that no timber had been taken from appellee's land. Such contention was apparently based on their belief that the east line of appellee's eighty acres was the east line of the Tanner land. Gordon on a number of occasions stated that he would not believe that the line was as contended by appellee until a survey disclosed the fact. He thereupon caused a survey to be made, which located the line as claimed by appellee. There was no controversy at the trial respecting the correctness of the survey. While it is now conceded that Gordon and Lewis encroached upon appellee's land and caused timber to be cut and removed therefrom, it is contended that the evidence did not establish that appellants were chargeable with the removal of all the timber that had been taken from appellee's lands; that appellee in his evidence had been able to identify, as having been taken by Gordon and Lewis, a certain number of trees, considerably fewer than the number that formed the basis of his damage. It may be said, however, that Gordon and Lewis, at least impliedly, conceded that they were responsible for all the timber that had been taken from appellee's land. They were present when several men were going over appellee's land for the express purpose of estimating the damages caused by the trespass committed by them. These men were counting the stumps and measuring their dimensions.

Neither Gordon nor Lewis, under such circumstances, claimed that any part of the timber being estimated had not been taken by their direction. On the contrary, Gordon asked one of the men to make an inventory of the timber that had been cut. No evidence was offered that any timber had been taken or cut except by persons who had purchased of Gordon and Lewis. Under the rule that controls in this court, the evidence is sufficient as against Lewis and Gordon B. Tanner.

It is urged that the damages assessed by the jury are excessive. By his complaint, appellee sought to recover damages for injury to the land caused by the cutting and removal of timber and the destruction of other timber growing thereon. In its scope the complaint presents a case in the nature of trespass *quare clausum fregit,* with added matter in the nature of *de bonis asportatis.* That is, the entire injury complained of consisted in the destruction of certain growing timber, the cutting of other timber, and the removal and appropriation of the timber cut. By the complaint the entire injury is declared on as an injury to the land, and the case was tried on that theory. That is, the case was tried on the theory that diminution in the value of the land occasioned by the cutting and removing and destruction of timber, rather than the value of the timber as a severed product, was the proper measure of recovery. Under the allegations of the complaint and the facts proven, the timber being immature, and certain young timber having been merely destroyed rather than cut, damages based on the value of the severed timber would not amount to full compensation. The following cases are instructive: *Disbrow* v. *Westchester, etc., Co.* (1900), 164 N. Y. 415, 58 N. E. 519; *Doak* v. *Mammoth, etc., Co.* (1911), 192 Fed. 748; *Dwight* v. *Elmira, etc., Co.* (1892), 132 N. Y. 199, 15 L. R. A. 612, 28 Am. St. 563, 30 N. E. 398; *Cleveland School District* v. *Great Northern R. Co.* (1910), 20 N. D. 124, 126 N. W. 995; 28 L. R. A. (N. S.) 757, note; *Reynolds* v.

*Great Northern R. Co.* (1912), 119 Minn. 251, 138 N. W. 30, 52 L. R. A. (N. S.) 91, and note; *American Sand, etc., Co.* v. *Spencer* (1913), 55 Ind. App. 523, 103 N. E. 426; *Sunnyside, etc., Co.* v. *Reitz* (1896), 14 Ind. App. 478, 39 N. E. 541, 43 N. E. 46.

There was substantial evidence that the diminution in the value of appellee's lands caused by the trespass thereon, and the cutting, destroying and removing of the timber was at least equal to the amount of the verdict. The evidence disclosed, however, that when appellee intervened and stopped the cutting and removing of the timber, there remained on the land several cords of excelsior wood that had been cut by purchasers from Lewis and Gordon, and that appellee took possession of and sold the same. It is urged by appellants that appellee realized from the sale of such excelsior timber a sum in excess of its value in the tree, and that as the evidence indicated that the trespass was unintentional and the result of mistake, appellants should have received the benefit of such excess value created by purchasers as their representatives, and that the verdict is, for this reason, excessive.

It is true, as argued by appellants, that under some circumstances, and in some forms of action, where the trespass is innocently or mistakenly committed, the value added to the severed or removed product by the labor of the trespasser, is not recoverable as a part of the damages, the rule in such cases being that full compensation limits the recovery. We do not find it necessary to determine whether such principle is applicable to any phase of the case here, but see the following and cases cited: *Sunnyside* v. *Reitz, supra; American Sand, etc., Co.* v. *Spencer, supra.*

Appellee by his complaint predicated the damages alleged to have been suffered upon the following elements: Entering on the land and cutting timber for the most part immature, the removal of such timber and the destruction of other young and growing timber in felling and hauling the

trees cut and removed. By reason of such elements, appellee alleged facts showing the diminution in the value of his lands. All the facts were submitted to the jury, including the fact that certain timber that had been cut was left piled on the land, its value in the tree and its value after it had been cut and piled, and what appellee realized therefrom.

The court instructed the jury that the action was brought not to recover the value of timber cut and removed and sold, but rather to recover damages to the land occasioned by cutting, removing and destroying young and growing timber. It is true that damage to land occasioned by cutting timber therefrom is complete when the timber is severed and reduced to personal property. It is apparent, however, that in a case of unlawful cutting of timber, which has a value as such, and independent of its connection with the land, the landowner's damages in fact are greater where the timber is removed and appropriated by the wrongdoer than where the timber is left on the land, and the landowner possesses himself of it. In the latter case, the timber, after it is severed, may be as valuable as when it was a part of the land, in which case the landowner's damages would be merely nominal. *Decamp* v. *Wallace* (1904), 45 Misc. Rep. 436, 92 N. Y. Supp. 746.

In the case at bar, witnesses testified to all the facts about cutting and removing the timber, and that certain timber that had been cut was left on the land, and passed into the appellee's possession, and from such viewpoint were permitted to testify to the value of appellee's lands before the timber was cut and removed therefrom, and also after such cutting and removing of the timber, as a basis for the measure of damages. Thus the facts respecting the entire injury were submitted to the jury and from their consideration the verdict was returned under the guidance of comprehensive instructions given by the court. It appears to us, therefore, that the verdict accomplished substantial justice.

Other questions are presented. Such questions, however, to the extent that they might otherwise be important, are eliminated by our view that the evidence is insufficient as to George C. Tanner, and that it convicts Gordon B. Tanner of having actively participated in the trespass complained of.

The judgment is affirmed as to Gordon B. Tanner and Charles Lewis, and reversed as to George C. Tanner, with instructions to sustain the motion for a new trial as to him, costs to be taxed one-third against appellee, and two-thirds against appellants Gordon B. Tanner and Charles Lewis.

NOTE.—Reported in 113 N. E. 769. Damages, measure of, in trespass for cutting, removing or injuring timber, 1 Am. St. 497; 38 Cyc 1131; 15 Ann. Cas. 917; Ann. Cas. 1912A 920.