Filed March 4, 1896.

---

No. 1,379.

The Sunnyside Coal and Coke Company *v.* Reitz et al.

EVIDENCE.—*Damages to Land.—How Proven.—Value.*—Evidence of the value of land from which coal has been taken, either before or after such taking, is inadmissible for defendant in an action for trespass in taking the coal, where plaintiff has offered no evidence as to the amount of damages to the land, although the complaint alleged injury thereto.

SAME.—*Damages to Land.—Opinion Evidence.—Value.*—A witness cannot give his opinion as to damages to real estate by the removal of coal, although he may give his opinion as to the value of the land with and without such removal.

The Sunnyside Coal and Coke Company *v.* Reitz *et al.*

SAME.—*Value of Land.*—*Damages.*—An offer to show the value of land before and after the removal of coal therefrom, is properly refused where no question has been asked, except as to the value before the removal.

SAME.—*Intention.*—*Trespass to Land.*—Evidence of the knowledge and intention of defendant's agent in entering upon plaintiff's land and removing coal therefrom, is admissible in an unintentional trespass for such removal, as the measure of damages for an intentional trespass differs from that for an unintentional one.

SAME.—*Intention.*—*Trespass.*—*Mines and Mining.*—Evidence of the intention and motives of a coal company in mining and taking coal from the premises of another, is admissible under an allegation of a complaint in trespass against the corporation charging willful trespass, as bearing upon the measure of damages.

APPELLATE PROCEDURE. — *Rehearing.* — *Scope of Consideration.* — Alleged error in giving instructions will not be considered on rehearing, where they were not assailed in the original brief.

SAME.—*Exclusion of Evidence.*—*Motion for New Trial.*—Alleged error in excluding evidence cannot be considered on appeal, notwithstanding an offer of the evidence sought to be introduced, where the motion for new trial assigned simply the sustaining of the objection to the question and not the exclusion of the offer.

SAME.—*Admission of Improper Evidence.*—*Reversal.*—Admission of improper evidence to prove a fact which is admitted, is not cause for reversal.

SAME.—*Reversal of Judgment.*—A correct judgment will not be reversed because of intervening errors.

DAMAGES.—*Chattel.*—*Conversion.*—*Real Estate.*—*Coal.*—The owner of land, from which coal has been carried away and converted, may recover its value as a chattel.

SAME.— *Measure Of.* — *Mines and Mining.* — *Trespass.* — The measure of damages for a willful trespass upon a mine, and the mining and removal of coal therefrom, is the value of the coal converted at the place where it lay after it had been mined, allowing nothing to the trespasser for severing the same.

PRINCIPAL AND AGENT.—*Notice.*—*Trespass to Land.*—A mining corporation is chargeable with the knowledge of the superintendent of a coal mine that land upon which he enters belongs to a third person, as the knowledge of an agent, while performing the principal's business, is the knowledge of the principal.

REAL ESTATE.—*License.*—Mere license from the owner of land to a given mining company to enter and remove coal therefrom, is revoked by a conveyance of the land.

TRESPASS TO LAND.—*Mining Coal.*—*Conversion.*—*Damages.*—*Allowance for Labor Expended.*—A trespasser who willfully enters

upon the land of another and removes coal therefrom, is not entitled to an allowance for the labor expended in removing the same, in an action for conversion of the coal.

INSTRUCTION TO JURY.—*Mines and Mining.*—*Evidence.*—An instruction relating to the mining of coal under a given street is properly refused, where three witnesses testify positively that no coal was taken from under it, and one map of survey shows such fact, although a copy of another map, which is not shown to be a correct copy of the original, and which is expressly contradicted by the maker of such original, shows that coal was mined thereunder.

ACTION.—*By Owner of Land.*—*Paper Title in Wife.*—*Trust.*—*Trespass.*—The owner of premises may maintain an action at law for trespass occurring while the paper title was in his wife under a trust not enforceable, but subsequently executed in his favor; and a separate action in equity to establish the trust is not necessary.

From the Vanderburg Circuit Court.

*A. Dyer, A. Gilchrist* and *C. A. DeBruler,* for appellant.

*J. S. Buchanan, C. Buchanan* and *S. R. Hornbrook,* for appellee.

LOTZ, J.—This is an appeal from a judgment of the superior court of Vanderburg county rendered against the appellant, upon the verdict of a jury, for the sum of $2,750.

The action was instituted by the appellee Clemmens Reitz, against the appellant and Bertha Reitz. The complaint is in two paragraphs. In the first, the appellee avers that he is and has been for eight years last past, the owner in fee and in possession of a part of block eleven and a part of block sixteen, Lamasco, now city of Evansville; that so far as the real estate situate in block eleven is concerned, the same since the 11th day of June, 1883, has belonged to him, although the paper title thereto was for a time, for his convenience, and for the convenience of his business, in his wife, the defendant Bertha Reitz; that he has been in the sole

and exclusive possession thereof ever since that date; that he bought it, paid for it, paid taxes upon it, improved it, and has occupied it solely, notoriously and to the exclusion of all others, and owned it; that his wife, the said Bertha, never had any interest in or to the same; that the paper title she held thereto was for the plaintiff and his benefit; that the said Bertha was willing to submit herself to the jurisdiction of the court as a party, and consent that a judgment might be rendered against her, barring her forever in any action against the Sunnyside Coal and Coke Company for trespass upon said lands; that on the first day of January, 1887, and on divers other dates between that and the commencement of this action the Sunnyside Coal and Coke Company wrongfully and unlawfully and without leave entered the premises of the plaintiff and dug, mined and removed eight thousand tons of bituminous coal of the value of $10,000.00, of which coal the plaintiff was the owner, and in possession, and converted and disposed of the same to its own use, and otherwise injured said premises to the plaintiff's damage in the sum of $10,000.00.

The second paragraph is the same as the first with the exception that it is averred that the trespass was done wrongfully, unlawfully, purposely and maliciously. The appellant answered in denial and specially a continuous license to take coal by an arrangement made with a former owner of the realty. Bertha Reitz filed an answer in which she admitted all the allegations of the complaint to be true so far as the same affected her, and disclaimed any right or title in the real estate, and to any interest in the coal taken therefrom, and consented that judgment might be rendered against her barring

and inhibiting her from ever after asserting any rights to the same.

Counsel for appellant have argued several points which they assume contain reversible error, but it is conceded that there are two controlling questions presented by the record: 1. Was the plaintiff entitled to recover for the coal taken during the time the title to the property was in the name of the co-defendant Bertha Reitz? (2) What is the proper measure of damages? The first of these questions was saved by motion to separate, and by motion to strike out parts of the complaint, by objection to the evidence and by an instruction requested to be given to the jury. It seems from the evidence that the major part of the coal was taken while the title to the land was in the name of Bertha Reitz. It is insisted with much earnestness that it was neither averred nor proved that any trust relation existed between Clemmens Reitz and his wife Bertha, because there was no contract or agreement that she was to hold the title in trust; that she was the absolute owner of the property in fee, and that any damage done in removing the coal was a chose in action that accrued to her and did not pass to her grantee upon a conveyance of the land.

If this were an action between Clemmens Reitz and Bertha Reitz to declare and enforce a trust, appellant's position would no doubt be well taken. In the absence of an agreement on the part of Bertha to hold the land in trust, the presumption would be that the conveyance was but a provision made for her by her husband. The statute of frauds would also prevent the enforcement of the trust, as resting in parol. Section 6631, R. S. 1894. While the statute is a bar to the enforcement of parol contracts concerning lands, it does not render such contracts illegal, and the parties may perform them if they

think proper. A trust of the kind averred may be shown to have existed, not for the purpose of enforcing it, but for the purpose of showing that it has been fully executed. *Moore* v. *Cottingham*, 90 Ind. 239; *Hays* v. *Reger*, 102 Ind. 524.

We are not here called upon to enforce a trust, but to declare the rights of the parties to an executed trust; and for that purpose it is immaterial whether or not the trust was one that could have been enforced by the courts in the first instance. The parties having voluntarily executed the trust as between themselves, their rights are the same as if the trust had been capable of enforcement at its inception. Had the trust been one of the latter kind and voluntarily executed, we apprehend that no question would arise as to the right of Clemmens Reitz to recover for the injury done while the legal title was in another. It is further contended that if the trust relation be admitted the case is then divisible into two actions, one at law to recover damages, and one in equity to establish the trust; that the first is triable by a jury and the latter by the court, and that it was error to submit the whole case to the jury. In this contention we do not concur. The action is one at law to recover damages done to real estate and for severing and converting coal. The trust relation is but an incidental matter. It is more properly a matter of evidence than of pleading. We think it is fairly inferable from the averments that a trust relation existed and there was some evidence tending to sustain it. As to the second question relating to the measure of damages, the court instructed the jury to the effect that if the trespass was committed by mistake or unintentionally the measure of damages would be the value of the coal taken at its market value in the vein, or before severing it from the soil, together with such other dam-

ages to the real estate flowing from such trespass. The court further instructed the jury that if the trespass was willfully and intentionally committed, the measure of damages would be the value of the coal converted at the place where it lay after it had been mined, allowing nothing to the defendant company for severing the same. There is some conflict in the authorities as to the proper measure of damages in such cases.

In *Woodenware Co.* v. *United States*, 106 U. S. 432, Justice Miller, after stating the rule in willful trespass to be the full value of the property at the time and place of demand or suit brought with no deduction for labor or expense, says: "There seems to us to be no doubt that in the case of a willful trespass the rule, as stated above, is the law of damages, both in England and in this country, though in some of the State courts the milder rule has been applied even in this class of cases. * * * * * On the other hand the weight of authority in this country, as well as in England, favors the doctrine that where the trespass is the result of inadvertence or mistake, and the wrong was not intentional, the value of the property when first taken must govern; or if the conversion sued for was after value had been added to it by the work of the defendant he should be credited with this addition."

The rule in this State in cases of willful trespass is that the owner may recover his chattels in specie, so long as their identity can be determined, no matter how much value may have been added to them by the labor of the wrongdoer, and if the chattels have been converted he may recover the value at the time of the conversion in the form in which they then existed if he is content therewith, though he is entitled to the highest price at any time between the taking and the conversion. *Ellis* v. *Wire*, 33 Ind. 127. As soon as the coal

in controversy in this case was severed from the soil, it became personal property, and for carrying it away and converting it to its own use the appellant became liable for such damages as might be assessed as in cases of other kinds of personal property. *Pittsburgh, etc., R. W. Co.* v. *Swinney, Exx.*, 97 Ind. 586 (598); 1 Hilliard, Torts, p. 501; *Hail* v. *Reed*, 15 B. Mon. 479.

While the coal lay in the vein it was a part of the realty; when it became severed, it became a chattel. The change in its condition did not change its ownership, it still belonged to the owner of the soil.   He was entitled to recover its possession, and if this could not be done he was entitled to recover its value as a chattel. If a trespass is willful and intentional, the law will not permit the trespasser to profit by his own wrong.  Whatever labor the trespasser voluntarily bestows upon property under such circumstances he must lose.   If a trespass is the result of a mistake the damages may be reduced by the value of the labor expended upon it.   The one is a positive aggressive wrong, the other a mere inadvertence.   As bearing upon the measure of damages in such cases, see *Everson* v. *Sellers*, 105 Ind. 266; *Yater* v. *Mullen*, 24 Ind. 277; *Martin* v. *Porter*, 5 M. & W. 302; *Avon Coal Co.* v. *McCulloch*, 59 Md. 403; *Barton Coal Co.* v. *Cox*, 39 Md. 1; *Robertson* v. *Jones*, 71 Ill. 405; *McLean Co. Coal Co.* v. *Lennon*, 91 Ill. 561.

The appellant further insists that the rule adopted by the court in its instructions permits the assessment of punitive damages.   Punitive damages only commence where full compensation ends.   Such damages lie exclusively in the discretion of the jury.   The owner of personal property is entitled to recover it, or its value, when converted.   If an intentional trespasser is compelled to lose the labor which he has bestowed upon

The Sunnyside Coal and Coke Company *v.* Reitz *et al.*

property converted, it results from the enforcement of a principle of law and not from the varying discretion given to the jury in assessing the damages.    We think the appellant cannot justly complain of the instructions bearing on the measure of damages.

The court below permitted the appellee to give evidence as to the intention and motives of the appellant's superintendent in mining and taking the coal.    This ruling was assigned as a cause for a new trial.    It is true as appellant points out that this court, in the case of *Knisely* v. *Hire,* 2 Ind. App. 86, which was an action for cutting timber from the plaintiff's land, used this language.    "Neither do we see how the good faith of the appellant could change the rule for the measurement of the damages in such cases as this.    Full compensation is all that appellee could recover under any phase of the case."    It does not appear from the opinion in that case that the complaint charged a willful trespass.    Here one paragraph of the complaint does charge a willful trespass, and the intention and motives of appellant's superintendent, at the time of taking the coal, were material as bearing upon the measure of damages.

The appellant offered to prove the market value of appellee's real estate, both before and after the injuries complained of.    This offer was refused.    Under the averments of the complaint, the appellee's damages were not confined to the value of the coal taken.    He was entitled to recover for any other injury done to his realty.    *Knisely* v. *Hire, supra.*    But as his evidence of damages was confined strictly to the value of the coal taken and no effort made to recover for any other injury done to the realty, there was no error in refusing the proffered evidence.

The appellant asked the court to instruct the jury to

the effect that the appellee had no right to recover for coal mined under Delaware street and Eleventh avenue, streets adjoining appellee's property.    There was no evidence that any coal was mined either under Delaware street or Eleventh avenue during the time of appellee's ownership, consequently there was no error in refusing this instruction.

The appellee was permitted over appellant's objection to give some evidence which had but little or no relevancy to the controversy, but we do not find anything in it that would warrant the reversal of the case.

It is lastly contended that the verdict is excessive.    A careful reading of the evidence discloses that there is some evidence tending to support the full amount of the verdict.    This court will not disturb it under such circumstances.

Judgment affirmed.

Filed January 29, 1895.

## On Petition for Rehearing.

Lotz, J.—The appellant has petitioned the court for a rehearing in this case, and makes an earnest and forcible argument in support thereof.    It concedes that in the court below and on the former presentation in this court, greater stress was put upon the right of the plaintiff to maintain the action while he had an equitable title only to the lands, and as to the measure of damages.    It is assumed that owing to such stress, this court overlooked the importance of other questions and was led into consequent error.    As to this intimation, we desire to say that we gave each question a careful consideration and reached the conclusion that substantial justice had been done by the judgment rendered, and that no error intervened that would cause a reversal.    In view of the earnestness of appellant's

argument, we proceed to give the points made in the petition a further consideration. It is conceded that no coal was taken from Block 16 since the appellee became the owner. Block 11 alone is in question. Upon the trial of the case the appellant produced two witnesses and propounded this question: "What is the market value of the fee simple of plaintiff's real estate in Block 11, Lamasco, without considering any improvements upon it, and upon the supposition that the coal vein is untouched and that the coal is still there?" The plaintiff's objection to the question was sustained. "The defendant company offered to show that the total value of the plaintiff's real estate in Block 11, Lamasco, without the improvements upon it, and upon the supposition that the coal vein under it is untouched, and that all the coal is still there, is not more than $3,000; and that the market value of said real estate, with the coal mined out and taken away, is as much as $2,900; and that the difference between the market value of the real estate without any coal having been taken from it. by the defendant, and with the coal having been taken from it by the defendant, is not more than $75. The objection of the plaintiff to this question and to this evidence was sustained by the court, and the defendant company at the time excepted to the ruling of the court."

In its motion for a new trial the appellant, as one of the causes, made this assignment: "The court erred in sustaining the objections of the plaintiff to the following questions to the witnesses Hiram E. Reed and Elder Cooper, and in sustaining the plaintiff's objection to said question to each of said witnesses, viz." (Setting out the question as above.)

We have made these quotations from the record in order to present the precise rulings involved.

In the original opinion it is stated that the appellee's evidence of damage was confined strictly to the value of the coal taken, and that no effort was made to recover for any injuries done to the realty.

Appellant's counsel characterize this statement as a palpable mistake. Let us see who is mistaken.

The *gravamen* of each paragraph of the complaint is trespass to the real estate and the severance and conversion of the coal. Here are two clear and distinct elements of damage; a permanent injury to the realty, and the conversion of the coal severed. It is immaterial whether the one be designated as trespass and the other trover, or whether the two be combined in an action for trespass. Trespass and trover are sometimes concurrent remedies. When two tortious acts are separate and distinct as to time and place, the general rule is that the pleader must sever or state them in separate counts or paragraphs; but if several injuries flow from one single act or from one continuous series of acts, they may all be united in one count or paragraph. This is the common law rule. Stephen Pl., 39, notes by Heard; *Sturgis* v. *Warren*, 11 Vt. 433; and this rule is especially applicable under our code practice, in which distinct forms of action are abolished.

It is true that under the averments of the complaint the plaintiff was entitled to recover damages done to the realty as well as for the coal severed and converted. There were two distinct grounds of recovery stated. But the plaintiff offered no evidence whatever of the amount of damages he sustained on account of any permanent injury to his real estate. He confined his evidence of damages to the amount and value of the coal taken, and no witness testified to, nor was there a scintilla of evidence that the plaintiff suffered other damages, even to the extent of one cent.

It is true that the plaintiff might have recovered other damages under the allegations, but if he chose to waive or abandon one ground by failing to offer any evidence thereon, the appellant should esteem it a matter of congratulation rather than of complaint.

If expressions be found in the plaintiff's evidence which might have been used as tending to show that his real estate suffered injury, it is clear that in the absence of any proof of the amount of such damages, such evidence was merely incidental, and that its sole purpose was to show the amount of the coal which had been mined and its value. By no possibility could such evidence be considered as fixing the amount of damages to the realty other than nominal. The jury could not possibly find damages that were not proved or attempted to be proved, or concerning which there was not a syllable of evidence. At the most, under such evidence, the jury could assess nominal damages only for injuries to the realty; and the authorities are all agreed that it is harmless error to assess or fail to assess nominal damages. *Brauns* v. *Glesige*, 130 Ind. 167.

The coal as it lay in place in the vein was a part of the realty; when it was severed it became a chattel. The severance did not change its ownership. The owner of the land was still the owner of the coal. When it was carried away and converted, the owner was entitled to recover its value as a chattel. For this injury the defendant must respond independently of any question as to the injury or damages done to the land.

If the plaintiff abandoned his claim for damages as to the injury done his lands, and gave no evidence whatever as to the amount of such damages, it is difficult to see upon what hypothesis the defendant was entitled to make proof of the value of the land, either before or after the entry.

The Sunnyside Coal and Coke Company *v.* Reitz *et al.*

If the plaintiff had brought suit against the defend-ant for a personal injury, claiming damages for the pain inflicted, the loss of time, and that he was prevented from fulfilling a contract by which he could have made a large profit; and if upon the trial he offered no evidence whatever as to such contract, would the defendant be permitted to prove that the plaintiff never had any such contract; and that he suffered no damages on account thereof? Or suppose the plaintiff had sued for goods sold and delivered, in one item claiming for coal, and in another for lumber, and if upon the trial he offered evidence as to the coal, but gave none whatever as to the lumber, would it be contended that the defendant should be permitted to prove that it never purchased any lumber of the plaintiff?

A bare statement of such a proposition is its own refutation. But this is precisely the attitude of the appellant in its contention on this point.

We repeat again that the evidence of the plaintiff as to the amount of damages was confined strictly to the coal taken and that not a syllable of evidence as to the amount of the damages to the real estate was given, not even to the extent of one cent. But there are other reasons why there was no error in the rulings of the court on these points.

Conceding for the sake of the argument that the question was a proper one, was the offer a proper one? The sustaining of an objection to a proper question is not of itself reversible error. It must be followed up by an offer to prove.

The answer to a question should be responsive to it, neither more nor less. If the offer to prove be impertinent or exceed the proper response, such additional matter is not available. In *Gray* v. *Elzroth*, 10 Ind. App. 587 (592), this court, by Gavin, J., said: "The offer to

prove included much more, but the additional matter is not available because not responsive to the question." This case furnishes a forcible illustration of the above rule. It is the settled law of this State that in proving the damages to real estate with and without given changes as to its condition, a witness may give his opinion as to its value with, and as to its value without, such changes; but the witness has no right to give his opinion as to the damages, for that is a question for the jury. *Yost* v. *Conroy*, 92 Ind. 464; *City of Lafayette* v. *Nagle*, 113 Ind. 425.

The only proper response to the question propounded would be the opinion of the witness as to the market value of the land, upon the supposition that the coal remained untouched in the land. If this had been answered, it could have availed the appellant nothing, for without proving the value of the land after its removal the jury would have no basis upon which to estimate the damages. No proper attempt was made to prove the value after the removal. No question was asked that called for such proof. The offer is also obnoxious because it contains the witness' estimate of the damages. This is contrary to all the later adjudications of this State. The offer as made was an entirety. The court ruled upon it as an entirety, for there was but one ruling. If some parts of the offer were responsive to the question and other parts not responsive, it was the duty of the appellant to separate the proper from the improper.

Nor does the offer show by whom or by what witnesses the proof could be made. The offer included much more than was embraced by the question propounded to the witnesses. No inference arises that certain proof can be made by a witness when no question is propounded that calls for such proof. If the

evidence which a party wishes to introduce rests in parol, then the witness from whom the proof is to be made must be placed upon the stand and a proper question propounded, and if objected to, then an offer should be made which in some form should contain a statement to the court that the witness will, if permitted, testify to a certain specified fact. *City of Evansville* v. *Thacker*, 2 Ind. App. 370; *Smith* v. *Gorham*, 119 Ind. 436. The offer in this case does not show that the witness would, if permitted, testify to a given fact only. It included a fact not responsive to the question. There was an attempt to make proof of a fact concerning which no inquiry was made.

There is still another reason why the rulings on the questions and offer are not available. The motion for a new trial assigns as a cause the sustaining of the objections to the questions only. It is not assigned as a cause that the court erred in excluding the offer. The ruling on the question alone does not present available error. To make it so it should be coupled with the ruling in excluding the offer. This might be done either in a separate cause, or by embracing both rulings in one specification. It takes both rulings to present available error, and no complaint is made in the motion for a new trial as to the ruling in excluding the offer.

Conceding without deciding that the plaintiff was entitled to recover damages other than for taking coal, and that the defendant was entitled to show that there was no injury done the realty, still, if the defendant made no proper effort to that end, there was no error in the ruling of the court excluding such testimony, nor in overruling the motion for a new trial.

It is sufficient for the purposes of this case to say that the defendant propounded no question nor made any proper effort to show the value of the real estate after

the removal of the coal, at any time, and that it made no complaint in the motion for a new trial, on account of the exclusion of such evidence.

As to instructions one and five given by the court it is only necessary to say that appellant did not assail them in its original brief.

It is further contended that the court in its former opinion summarily disposed of appellant's objections to certain evidence going to the intention of a witness, Jabez Wooley; and that the admission of such evidence was reversible error.

The admission of evidence tending to show the knowledge and intention of appellant's agents, at the time of making the entry, was proper and important under the issues formed. If the trespass was committed intentionally, then the law fixes one rule; and if unintentionally, then another rule, for the measurement of the damages.

Whatever the rule may be elsewhere, it is settled in this State, that in an inadvertent or unintentional trespass upon lands, the damages should be measured by the permanent injury done, plus the value of the product severed immediately after the severance, less the cost of the labor expended upon them; the burden being on the defendant to show such cost. If the trespass be intentionally committed, the damages should be measured by the permanent injury done, plus the value of the products severed at the time of their conversion, or their highest market-price at any time between the severance and the conversion; and the trespasser is not entitled to any reduction on account of the labor expended on such products. It is held in some cases that the plaintiff is entitled to the highest price of his property from the time of the taking to the time of the trial. It was said by the Supreme Court, in *Ellis* v.

*Wire, supra:* "Or it has been held that the law will, upon the principle of natural justice, that a wrongdoer ought not to be allowed to make a profit by his own willful tort, treat the conversion of property of fluctuating value as occurring at such time between the taking and the *trial,* as the property bears the highest price in the market." In *Woodenware Co.* v. *U. S., supra,* which was an action for timber cut and removed, it is stated in the syllabus, that where the defendant is a willful trespasser the measure of the damages is the full value of the property at the time and place of the demand, or of suit brought with no deduction for labor or expense.

That the appellant did commit the trespass and sever, remove and convert the coal, were undisputed facts.

The witness Jabez Wooley was the superintendent of the appellant's coal mine at the time the entry upon the plaintiff's lands was made. It was an admitted fact that there was one main entry running south from the shaft, from which several entries were made to the east; the third east entry being under the plaintiff's land. Wooley testified, that "I thought the third east entry was under the plaintiff's land. I aimed to run it under Block 11, which is now his land. * * * The third east entry was driven under Block 11. * * * I supposed we owned the coal under Block 11; I had been informed that the company had purchased the coal under that Block from Mr. Edward Law, who owned the Block at that time. * * * It was my understanding all the time that the coal under Block 11, which is claimed by the plaintiff, was owned by the Sunnyside Coal and Coke Company."

John Wooley, another witness, testified that he was the manager in charge of the business of the defendant, other than the working of the mine, and that he had

been very often in the mine, and that "while the former company was working this mine, I bought for that company the coal under Block 11 from Edward Law, who was the owner of plaintiff's land in Block 11 at that time; I paid him for it with a bill he owed the company for coal of $36.00; he made no deed or other writing to the company; the purchase of the coal was made by a verbal contract only."

It is also true that another witness for the appellant, E. P. Huston, testified that he had been a member of the board of directors of the defendant company since its organization, and its secretary, and kept the minutes, and had been present at all of the meetings of the board; that the board of directors at no time had any notice or information that the company's superintendent or other servant was taking coal from under the plaintiff's land, or was taking coal that did not belong to the company, until a few days before bringing this suit.

It is not necessary in order to carry knowledge to a corporation to show that its board of directors had such knowledge. The merest novice in the law knows that the knowledge possessed by an agent, while in the act of performing his principal's business within the scope of his authority, is imputed to the principal. So far as legal liability is concerned under such circumstances, it is unimportant whether the principal ever had actual knowledge. The knowledge of the agent is the knowledge of the principal in legal contemplation.

An inadvertent act is one done without consideration or intention; one not proceeding from design. Lands are divided into parcels or tracts. If one intend to enter upon a particular tract, and by mistake, accident or without design enter upon another tract, he commits an inadvertent trespass, because he had no intention, de-

sign or purpose to do the thing which he did. He intended to enter upon another and entirely different tract; but the defendant's agents designed to enter upon Block 11. They did precisely the thing they intended to do. They were never mistaken as to the lands from which they were taking the coal. At the most they were only mistaken as to the legal rights of the defendant. A mistake as to locality or place, and a mistake as to legal rights are entirely dissimilar. The one is an overt physical act, the other a mental conception. Conveyances of lands or of any interest therein can only be made by deed in writing, subscribed, sealed and acknowledged, except leases for a term not exceeding three years; section 3335, R. S. 1894. At the most the appellant only had a license from a former owner, and a conveyance revoked the license. The undisputed evidence shows that Edward Law, the person from whom the appellant claimed to have obtained the license, did not own or have any interest in Block 11 since June 11, 1883, long before the appellant came into existence. The appellant did not even have color of title. A person who makes improvements upon lands without color of title cannot recover for the same. *Bryan* v. *Uland*, 101 Ind. 477. Much less then can a trespasser, who has no shadow of right, recover for the labor expended upon products removed. Under the undisputed facts of this case, and the law as applicable to them, the appellant could not have obtained even a license from Law (for he never had a shadow of title to Block 11 after June 11, 1883, and the appellant was not incorporated until 1886), we have then two of appellant's agents admitting that they committed the trespass intentionally. They did not act inadvertently, they knew what they were doing when they took the coal. This, in legal

effect, made the trespass an intentional one on the part of the corporation.

Conceding that it was improper to permit the plaintiff to show the declarations of the witness Jabez Wooley, before and after the trespass, concerning his knowledge and intention at the time of the entry, it is difficult to see how the appellant could be harmed thereby, for the intentional character of the trespass, both in law and in fact, stands admitted. The substantial fact is admitted, and now we are asked to reverse because the court afterwards permitted the plaintiff to give certain declarations concerning an admitted fact. It is harmless error to admit improper evidence which only tends to prove a fact otherwise clearly shown by competent evidence. *Stumph* v. *Miller,* 142 Ind. 442.

If the plaintiff was permitted to give some evidence that tended to impeach or discredit the witness, Jabez Wooley, surely the defendant ought not to complain, for he was the plaintiff's witness.

In speaking of the refusal of the court to give an instruction relating to the coal under Delaware street and Eleventh avenue, we stated in our former opinion that there was no evidence that any coal was mined under either, during the time of appellee's ownership.

Appellant's counsel characterize this statement as an evident mistake, although it is conceded to be true as to Delaware street. Two maps of surveys were introduced in evidence, one made by the witness Saunders, and one by the witness Minto. The Saunders map shows that the main south entry of the mine extended across the west end of Block 11, but did not reach or extend under Eleventh avenue. The Minto map shows that the entry extended a short distance under Eleventh avenue. The witness Minto testified that he made the

survey at the request of the defendant : ''The map shown me (the one introduced in evidence) is a copy of the map I made from that survey ; the main south entry runs a little east of south ; in doing this work I established my base so as to secure a perfectly correct result, and the survey of the mine was made in all respects correctly ; *the main south entry is east of Eleventh avenue.*'' It will be seen from this, that the witness did not testify that the copy was a correct one.  On the contrary he expressly contradicted the copy, for he said the main south entry is east of Eleventh avenue.  It could not be east of it, if it was under it.  The map went in evidence coupled with the explanations of the witness, and when considered with that explanation, it conclusively appears that the entry did not extend under the street.  Appellant's own witness and business manager, John Wooley, testified that ''all of the coal under plaintiff's land, in Block 11, which is west of the main south entry as shown by the Saunders map is still there, none of it has been mined out.''

We have here, then, three witnesses all of whom testify positively when their attention is called to it that no coal was taken from under Eleventh avenue.  We have also one map of a survey which shows that no coal was taken from under this avenue.  As against this array we have a copy of a map which is not shown to be a correct copy of the original, and which is expressly contradicted by the maker of the original.

Under this evidence, and under the rules of law governing in such circumstances, was not this court justified in assuming that there was no evidence that any coal was taken from under the street ?  It is not true that where there is any evidence whatever concerning a fact, the party is entitled to go to the jury thereon.

The old rule that a case must go to the jury, or a fact must be left to the jury if there is a scintilla of evidence, has been long since exploded. The better and improved rule is not to see that there is any evidence, a scintilla, but whether there is any upon which the jury can, in any justifiable view, find for the party producing it. The evidence adduced to prove a fact must have some legal weight. "There is no practical or logical difference between no evidence and evidence without legal weight." If the evidence adduced is so slight and inconclusive that no rational, well constructed mind can infer from it the fact which it is offered to establish, it is the duty of the court to instruct the jury that there is no evidence warranting it to find the fact. *Connor* v. *Giles*, 76 Me. 132; Thomp. Trials, sections 2246, 2249.

The court and jury may disregard evidence which is too slight and trifling to be considered and acted upon by an intelligent, reasonable person. *Connor* v. *Giles*, *supra.*

So, on the other hand, when the material facts are not controverted in any essential respect, the court may direct the verdict. *Faris* v. *Hoberg*, 134 Ind. 269; *Hall* v. *Durham*, 109 Ind. 434; *Wabash R. W. Co.* v. *Williamson*, 104 Ind. 154; *Kavanaugh* v. *Taylor*, 2 Ind. App. 502.

The case of *Cincinnati, etc., R. R. Co.* v. *Wood*, 82 Ind. 593, was an action brought against a railroad company for killing a horse, at a point where the road was not fenced. In the Supreme Court the company contended that the evidence proved without contradiction that this portion of its track was used for switching purposes daily, and that it was not required to fence at that point. Several witnesses for the plaintiff testified that no business was transacted by the company at the

point where the horse entered, except to run its locomotives and trains over the main track; that cars were neither loaded nor unloaded at that point by persons doing business with the company. The witnesses thus testifying were in no way connected with the business of the company; they were merely casual observers. A number of witnesses connected with the business of the road, and who had ample opportunities to know, testified that the grounds were used by persons doing business with the road; that teams in carrying freight to and from the road used the grounds, and that cars were often coupled and uncoupled there for switching purposes. The court sustained the company's contention, and held that while the testimony was not in complete harmony there was no conflict; that the plaintiff's witnesses should be understood as testifying that, as far as they had observed or noticed, the grounds had not been used by the company.

If there was no conflict, and no evidence which legitimately tended to show that the grounds were not used for railroad purposes other than operating the trains over the main track under the facts of that case, then there is surely no evidence in this case that has legal weight which tends to prove that coal was taken from under the street. With such rules prevailing with reference to directing the verdict, the court surely would have the right to determine that there was no evidence on a given point and refuse an instruction that was not applicable to the evidence. Even if it be conceded that there was some evidence, no matter how slight, which tended to show that the excavation extended under the street, still it does not follow that coal was taken from the excavation. No witness testified that any coal was taken from under the street.

Under the rule announced by the above authorities

we repeat that there was no evidence that any coal was mined either under Delaware street or Eleventh avenue during the appellee's ownership.    It is also a well settled rule that a lot-owner owns to the center of the adjoining street, and is entitled to the mineral within the street.    This being true, the appellee was entitled to recover for the coal under the street, and the instruction asked was erroneous.

To reverse a case for such a trivial reason and under the circumstances disclosed by the record, would be equivalent to disregarding the forms and ends of justice.

Appellant earnestly insists that the verdict is grossly excessive, and that the judgment is an "outrage." We have given the evidence relating to the damages a careful consideration and do not concur in this statement. It must be remembered that the undisputed evidence shows that the trespass was an intentional one, and that the appellee was entitled to the highest price for his coal at any time from the conversion to the bringing of the suit, and that, too, without any reduction on account of the labor expended upon it.    Appellant's business manager testified that the company sold coal during the mining operations on appellee's land, and before this action was instituted, at prices varying from $4\frac{2}{3}$ to 9 cents per bushel.    The undisputed evidence shows that the area of Block 11, owned by appellee, was about one and one-third acres.    There was some controversy as to the quantity of coal under appellee's land.    One of the witnesses, a mining expert, estimated the quantity at 200,000 bushels per acre.    Another witness estimated the quantity under plaintiff's land at 282,000 bushels.    There was also a controversy as to the amount removed.    The great weight of the testimony tended to prove that at least two-thirds of the quantity had been removed.    The appellant's business

manager testified that from one-fifth to one-sixth of the whole had been mined out. Another one of appellant's witnesses estimated that from 37,000 to 40,000 bushels had been removed by the appellant. This was the lowest estimate put upon it by any witness.

This evidence would have warranted a verdict for a much larger amount for the coal taken alone.

The appellant has been in error throughout in supposing that the plaintiff was not entitled in this form of action to recover for the value of the coal after it became a chattel. Lord Hatherly, in the house of lords, in the case of *Livingstone* v. *Ranyards Coal Co.*, 5 App. Cas. 25, said: "There is no doubt that if a man furtively and in bad faith robs his neighbor of his property, and because it is underground, is probably for some little time not detected, the court of equity in this country will struggle, or I should rather say will assert, its authority to punish the fraud by fixing the person with the value of the whole of the property which he has so furtively taken and making him no allowance in respect of what he has done as would have been justly made to him, if the parties had been working by agreement."

This case when stripped of all matters about which there is a controversy, and upon its undisputed facts, narrows itself down to this. The appellant knowingly and intentionally entered upon the appellee's land and mined, removed and converted to its own use at least 37,000 bushels of coal. The highest price of coal after the commission of the trespass until the bringing of the suit, was 9 cents per bushel; this would equal $3,300, while the appellee had judgment for $2,750 only.

If it be conceded that every ruling made in the case (except the one holding that the plaintiff is entitled to maintain the action) is erroneous, that every ruling on the admission and exclusion of evidence, of giving and

refusing to give instructions, and of damages as to the realty, still upon the conceded and undisputed facts—facts proved by the appellant itself and the law as applied to them,—the judgment is one against which the appellant has no cause for complaint.

If it should be admitted that every contention the appellant makes is well taken, except the first, there can be no reversal, for the judgment rendered is right, notwithstanding such intervening errors. When substantial justice has been done by the judgment rendered, intervening errors are unavailing. Not only the statutes (sections 401, 670, Burns R. S. 1894), and the precedents, but a proper regard for the administration of justice prevent a reversal, under such circumstances.

Petition overruled.

Filed March 4, 1896.

GAVIN, C. J.—I concur that there was no available error in refusing the evidence of value offered under the rule laid down in *Gray* v. *Elzroth*, but I am of opinion that for some of the other causes urged the petition should be granted.

Filed March 4, 1896.

### DISSENTING OPINION.

REINHARD, J.—Upon a closer examination of the questions involved in this case, I am firmly convinced that a mistake was made in the original opinion as to several propositions, and that, consequently, a rehearing should be granted. Upon the trial, appellant asked one of its witnesses the following question : "What is the market value of the fee simple of plaintiff's real estate in block 11, Lamasco, without considering any improvement upon it, and upon the supposition that the coal vein is untouched, and that the coal is still there?" To this question the appellee objected, whereupon the

The Sunnyside Coal and Coke Company *v.* Reitz *et al.*

appellant's counsel stated that they offered to show that the total value of this real estate of plaintiff with the coal there and untouched was not more than $3,000, and the offer was made further to show that the value of the same real estate with the coal all mined out was at least $2,900.     The court sustained the objection and excluded the evidence, to which ruling the appellant excepted.

I am of the opinion that this ruling constituted reversible error, if the question was properly saved.     If the question is not properly presented, I agree there was no available error in this respect, but I cannot agree with the conclusion of the court based upon the assumption that the point was appropriately presented.     My reasons for this conclusion are found in the argument and authorities contained in the briefs of appellant's counsel from which I make the following extracts:

"1.     The complaint in each paragraph in addition to damages for conversion of the coal charges that the defendant 'otherwise injured said premises,' and claims damages on both grounds.

"2.     There was evidence upon which the jury must have assessed damages for injuries to the real estate in addition to the value of the coal taken. The evidence showed that the vein of coal which was taken out from under this land was three feet ten inches, to four feet eight inches in thickness; that the width of the room from which the coal was taken was fifty to sixty feet.     Jarvis, a witness for appellee, who had been foreman of the mine, after testifying as to the unusual manner in which the work of mining was done, makes this statement:  'A pillar was taken out on the south of this third entry, and the roof came down.  The work in the mine on this side was abandoned in June or July, 1890.  My son took this pillar out.'     The same

witness testifies: 'The coal that is left under block 11 is worth nothing and cannot be mined.' The reasons why it could not be mined were also shown by the appellee: He said that 'the second, third and fourth east entries were closed up, and were fallen in and filled with dirt,' etc., and that 'half or about half of the coal south of this third east entry, which was so closed up, was left here.'

"On this evidence a jury would have been authorized to find that making under a block in a city excavations fifty to sixty feet wide, and of a depth of three feet ten inches, to four feet eight inches, and the falling in of the roof which happened in consequence of these wide excavations, and the liability of the surface above at some time to settle unequally, would be a greater or less injury to the real estate, and would render its market value less. Presumably a purchaser knowing of such undermining would not be willing to pay as much for this real estate as he otherwise would have done.

"Again, in addition, the effect of mining out part of this coal and leaving the roofs of the rooms and entries to fall in would prevent mining the remainder of the coal, and in this way a part of the injury done by the trespass to the value of the real estate would be that the remaining coal could not be mined and would be lost to its owner.

"On this evidence the jury certainly were authorized to find damages for injuries from the trespass to the real estate separate and distinct from the value of the coal taken and converted into personal property, and in addition to the value of the coal so taken.

"3. The case went to the jury on this theory: In stating the issues, in the first instruction, the court calls the attention of the jury to the claim in the first paragraph of the complaint, 'that the defendant converted

said coal to its own use, and otherwise injured his premises,' and that in the second paragraph of the complaint an additional averment was made that the trespass was done purposely and maliciously.

"Again, in instruction 5, the court, following the language of the complaint in this respect, instructed the jury that on the facts assumed in the instruction the defendant would be liable to the plaintiff for the injury done to his property. 'If the jury should find that the plaintiff was the owner of the real estate in the complaint set forth, and had the possession or right of possession to the same, and that defendant by its duly authorized agents or employes entered upon his premises without leave or license therefor, and took, mined and removed coal therefrom, then the defendant would be guilty of trespass and liable to plaintiff for the injuries done his property. For the law protects every man in the lawful and exclusive possession of his property, and all parties interfering therewith are wrong doers and trespassers,' etc.

"4. It is then clear that the statement in the opinion that 'evidence of damages was confined strictly to the value of the coal taken' is a mistake. It is equally clear that the further statement that no effort was made 'to recover for any injury done to the realty' is also a mistake.

"The complaint claimed these damages; the evidence made a case for the recovery of such damages; the court in its instruction authorized the assessment of such damages; the attorneys for appellee show in their brief that they claimed these damages. The greater stress of their case, both in the court below and in this court, was put upon the additional element of damage, the value of the coal as a chattel when converted, and the rule that obtains in such a case

and this fact has evidently led this court into its error. It is clear that one of the questions to be determined by the jury was as to the amount of damages for the injuries to the property other than the mere value of the coal taken. Appellant to meet this question offered to show that the market value of the real estate before and after the taking of the coal, and this evidence was excluded, and the exception properly saved."

If I correctly understand the position taken in the prevailing opinion on petition for rehearing, it is that because no witness testified or gave any estimate as to the damages to the real estate proper, in dollars and cents, it must be conclusively presumed that the jury found none, and that the large estimate of damages returned in the verdict contains nothing for damages to the land. I do not think this position tenable. We cannot say what may influence a jury with such evidence before it as it had in the present case.

The court did not instruct the jury to find nothing for injury to the land. The appellee was permitted to give evidence which laid the foundation for the recovery of such damages. To say that the appellant must be shut out from showing what the actual damages to the realty were, in such circumstances, is to give the appellee a very unfair advantage, as I view it. In the absence of countervailing or explanatory evidence as to the damages done the real estate, the tendency of the appellee's evidence upon the subject must have been to divert the minds of the jury from the real issue and to influence their passions and excite their prejudice against the appellant; that a person who would injure the appellee's lands, as was here shown, is deserving of having the highest penalty assessed against him, is the most natural impulse of the mind, after hearing such evidence as the appellee gave, and to permit the jury to

assess the appellee's damages without giving the appellant the right to show to what extent the land had really been injured, must have been prejudicial to the appellant. Had the appellee expressly abandoned that branch of his case which related to the real estate, or had the jury been instructed to disregard it, the case would be different, but this was not done. On the contrary, the court instructed the jury as above shown, that if they should find that plaintiff was the owner of the real estate as set forth in the complaint, etc., but had entered upon the premises without leave, and mined and removed coal therefrom, then the defendant would be a trespasser and *"liable to the plaintiff for the injuries done his property."*

If the evidence given when considered in connection with this instruction was not prejudicial to appellant, it must be because the jury disregarded the evidence introduced without being told to do so, a thing we cannot assume.

The appellee introduced his evidence without objection from the appellant as the latter presumably expected to give countervailing or explanatory evidence upon the same subject, but when it offered the latter it was denied the opportunity of doing so.

I do not dispute the correctness of the proposition that, as a general rule, the appellant must make it appear that the erroneous ruling of which he complains was prejudicial to him. But there are many exceptions to the general rule. Thus where the evidence is conflicting, the exclusion of evidence which is material and competent, and tends to sustain the theory of the party offering it, may be presumed to be error, inasmuch as such party had the right to put forward all proper evidence he was able to secure, and the denial of such right is presumptively prejudicial. Elliott App. Proced., sec-

tion 594.    Where competent and material evidence is improperly rejected a presumption arises that the ruling was prejudicial, unless the contrary appears from the record. *Benjamin* v. *McElwaine-Richards Co.*, 10 Ind. App. 76, and authorities cited.

Even if this rule were applied in all its strictness, I think there should be a reversal, for the reason that the rejection of this material evidence is at first blush apparently influential in affecting the verdict so as to make it highly probable that the appellant was prejudiced by it.

I must also dissent from so much of the principal opinion on petition for a rehearing as disposes of the conceded error of permitting evidence of the declarations of one Jabez D. Wooley to be given against the appellant, and the refusal to strike out said evidence.

The opinion holds that the evidence was inadmissible but that its admission was harmless error because the court instructed the jury to measure the damages by the rule which would govern in an unintentional trespass.

The opinion of the court proceeds upon the assumption that the evidence was competent and admitted only for the purpose of showing an intentional trespass.    In other words, the appellee was permitted, over appellant's objection, to show facts tending to establish an intentional or malicious trespass, for which they may have given any amount of damage to the real estate, but because the court instructed the jury that the coal taken should be compensated according to its value as a chattel, therefore the conclusion follows that nothing more was awarded the appellee.    I cannot concur in this view, but am of the opinion that the admission of the testimony was *prima facie* prejudicial to appellant. Elliott App. Proced., section 670, and notes; *Memphis*,

etc., *Packet Co.* v. *McCool*, 83 Ind. 392; *Mays* v. *Hedges*, 79 Ind. 288.

In commenting on the alleged error of the trial court in refusing an instruction relating to coal mined under Delaware street and Eleventh avenue, it was said in the former opinion of the court that there was no evidence of any coal being mined there. Of course if there was any such evidence, however slight, it was error to refuse the instruction, for it is not contended that the instruction was improper for any other reason. I regret that I must take issue with the statement in the opinion of the majority that there was no such evidence. The Minto plat shows, as is very correctly stated in the principal opinion on the petition for a rehearing, that the entry extended under Eleventh avenue, and if this was the case, the jury should have been left to determine whether coal was in fact taken out from under this avenue or not. That the court knows judicially that no coal is mined in the act of making an entry is a position I do not think the court would willingly take. And yet I am convinced that we must take just that position before we can hold that there is no evidence of coal having been taken from under this avenue. Nor will it do to disregard the Minto plat as an item of evidence even if it be true that Minto's own testimony contradicted the plat in this particular, and that the appellant's manager testified contrary to the plat.

The plat was authenticated as being correct and it was for the jury alone to say whether or not it spoke the truth. I cannot agree, therefore, that the court was justified in refusing this instruction.

For these reasons I respectfully dissent from the opinion denying a rehearing.

Filed March 4, 1896.