**BERNS CONSTRUCTION COMPANY,**
Inc., Plaintiff-Appellee,

v.

Herman H. HIGHLEY, Thelma G. Highley, Helen L. Nickelsen, Helen L. Nickelsen, Administratrix of the Estate of John M. Nickelsen, deceased, Charles A. Pratt, Trustee in Bankruptcy of the Estate of Herman H. Highley, Defendants-Appellees,

and

**United States of America,**
Intervenor-Appellant.

**J. L. WILSON, Plaintiff-Appellee,**

v.

Herman H. HIGHLEY, Thelma G. Highley, Helen L. Nickelsen, Helen L. Nickelsen, Administratrix of the Estate of John M. Nickelsen, deceased, Charles A. Pratt, Trustee in Bankruptcy of the Estate of Herman H. Highley, Defendants-Appellees,

and

**United States of America,**
Intervenor-Appellant.

Nos. 14452, 14453.

United States Court of Appeals
Seventh Circuit.

May 26, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Martin B. Cowan, Lee A. Jackson, Joseph Kovner, Attys., U. S. Dept. of Justice, Washington, D. C., Richard P. Stein, U. S. Atty., Robert W. Geddes, Asst. U. S. Atty., of counsel, for appellant.

Frank W. Campbell, Nobelsville, Ind., Merrill Moores, James J. Stewart, Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiffs, Berns Construction Company, Inc. (Berns), and J. L. Wilson (Wilson), brought these interpleader actions against defendants, *inter alia*, Helen L. Nickelsen, individually and as administratrix of the estate of John M. Nickelsen, deceased (mortgagees), and the United States.[1] The Government was dismissed from both cases due to sovereign immunity. The Government there-

---

1. Also named as defendants were Herman H. Highley, Thelma G. Highley and

Charles A. Pratt, trustee in bankruptcy of the estate of Herman H. Highley.

after intervened and the two cases were consolidated for trial.

From a judgment in favor of the mortgagees, the Government appealed.

The following is a summary of the facts, which were stipulated, giving rise to the legal questions in issue.

On or about June 26, 1956, Herman H. Highley and Thelma G. Highley, executed a promissory note to the mortgagees, secured by a first mortgage on the Highleys' property, which was located in Indiana. This mortgage was recorded on or about March 28, 1957.

On March 28, 1960, plaintiff Berns entered into a contract with Herman Highley, without the knowledge or consent of the mortgagees. This contract provided that Berns could remove dirt and gravel from the mortgaged property for an agreed sum per cubic yard. Berns agreed to replace all topsoil. The dirt and gravel were to be used in the construction of an Indiana state highway nearby.

Plaintiff Wilson entered into a similar contract with Herman Highley. This contract contained an additional provision that the property would be left in a satisfactory drainage condition.

On May 6, 1960, the District Director of Internal Revenue made an assessment against the Highleys for income tax deficiencies for the years 1955 through 1958.

On June 16, 1960, the mortgagees notified plaintiffs that they would be held liable for damages resulting from removal of the "topsoil."[2] Although on such notice, plaintiffs continued removing dirt and gravel but advised the mortgagees that all sums due and owing to the Highleys would be held pending final determination of the rights of the mortgagees.

On or about July 29, 1960, the note and mortgage were reduced to judgment through foreclosure by the mortgagees, in the Circuit Court, Hamilton County, Indiana.

On August 21, 1960, the Government filed and recorded tax liens with respect to the May 6, 1960 assessment against all property and rights to property of the Highleys.

On September 1, 1960, the Hamilton County Circuit Court issued execution on its judgment of foreclosure.

On September 13, 1960, the Government served a notice of levy on Berns, demanding payment of the debt owed the Highleys.

On November 10, 1960, the mortgaged property was sold to the mortgagees for $38,000, leaving $30,873.71 unpaid on their judgment. The Government makes no claim to this amount, since the mortgagees were judgment creditors prior to the time the Government filed and recorded the tax lien. Cf. United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

The dispute concerns the proceeds from the sale of dirt and gravel in the amount of $3623.50. The district court entered judgment awarding these proceeds to the mortgagees, less costs of the action and fees for plaintiffs' attorney totaling $750.

Both parties agree that Indiana law is controlling, Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); that under Indiana law a mortgagee has no interest in rents and profits until he ousts the mortgagor in possession; and that a mortgagor may not commit waste upon the land. Knarr v. Conaway, et al., 42 Ind. 260, 265 (1873).

The main issue to be decided is whether the severance and sale of dirt and gravel, without the knowledge or consent of the mortgagees, is a sale of part of the realty which is security to the mortgagees and constitutes waste; or, whether such dirt and gravel and the proceeds therefrom are rents and profits which belong to the mortgagor in possession, thus subjecting such proceeds to the Government's tax lien.

---

2. While the letter from the mortgagees to plaintiffs used the word "topsoil," this suit is for the proceeds from the sale of dirt and gravel.

242

■ The distinction between rents and profits and waste is generally said to be that rents and profits pertain to annual income from the property, see 36A Words and Phrases, "Rent and Profit", pp. 694–695 (1962), while waste is any act which does lasting damage to the freehold. See 44A Words and Phrases, "Waste", pp. 663–669 (1962).

"Although a mortgagor in possession is regarded for most purposes as the owner of the land, and as such entitled to the *temporary annual rents and profits;* yet, inasmuch as the very purpose of the mortgage would be defeated by any acts affecting the permanent value of the property, no point of law is better settled than that a court of equity will grant an injunction to restrain waste by the mortgagor or those claiming under him, when it is such as *may render unsafe the debt secured by the mortgage.*" (Emphasis added.) Knarr v. Conaway et al., 42 Ind. at 265.

The Government contends that the district court erred in holding the removal of the dirt and gravel constituted waste, since there was no proof that such removal damaged or reduced the value of the land. The Government argues that "the only acceptable evidence here would have been direct and competent testimony, as to the value of the land before and after the removal of the dirt fill."

This argument fails to recognize that dirt and gravel are part of the corpus of the land. Land "includes, not only the face of the earth, but everything under it." 73 C.J.S. Property § 7d(2) (b) at 163 (1951)

■ It appears that in Indiana proof of reduction in value of the land is immaterial when a part of the corpus of the land is being removed. In Sunnyside Coal & Coke Co. v. Reitz, 14 Ind.App. 478, 39 N.E. 541 (1895), plaintiff sought $10,000 from defendant for coal which defendant had allegedly dug and removed from plaintiff's property. On petition for rehearing, 14 Ind.App. 487, 43 N.E. 46 (1895), defendant argued that the trial court had erred in sustaining an objection to evidence which would attempt to establish " 'that the difference between the market value of the real estate, without any coal having been taken from it by the defendant, and with the coal having been taken from it by the defendant, is not more than $75.' " 14 Ind.App. at 488, 43 N.E. at 47. The court held that excluding this evidence was not error and stated: "The coal, as it lay in place in the vein, was a part of the realty. When it was severed, it became a chattel. The severance did not change its ownership. The owner of the land was still the owner of the coal. When it was carried away and converted, the owner was entitled to recover its value as a chattel. For this injury the defendant must respond, independently of any question as to the injury or damages done to the land." 14 Ind. App. at 490, 43 N.E. at 48. See also, Richmond Natural Gas Co. v. Davenport, 37 Ind.App. 25, 76 N.E. 525 (1905).

The instant case is to be distinguished from cases where a well, mine or quarry is *opened prior* to the execution of a mortgage or commencement of a life estate. In such cases, the taking of oil, gas and minerals by the person in possession is not waste. Richmond Natural Gas Co. v. Davenport, 37 Ind.App. at 31, 76 N.E. at 527 (dictum); Andrews v. Andrews, 31 Ind.App. 189, 67 N.E. 461 (1903).

■ We hold that the sale of dirt and gravel by the mortgagor in possession was waste, regardless of the provisions in the contracts for replacement of topsoil and satisfactory drainage conditions. Potomac Dredging Co. v. Smoot, 108 Md. 54, 69 A. 507, 510 (1908); Fawn Lake Ranch Co. v. Cumbow, 102 Neb. 288, 167 N.W. 75, 76 (1918) (dictum); Cosgriff v. Dewey, 164 N.Y. 1, 58 N.E. 1 (1900).

Finally, we are presented with the issue of whether, assuming the sale of dirt and gravel was waste, the mortgagees have the right to recover the proceeds of such sale. We hold that under Indiana law and the law generally, mortgagees have this right. See Knarr v. Conaway et al., 42 Ind. 260, 265 (1873); Sunnyside Coal & Coke Co. v. Reitz, 14

Ind.App. 478, 39 N.E. 541 (1895); and 36 Am.Jur. Mortgages §§ 363-367 (1941).

Since the Government concedes that if we affirm the judgment below with respect to the rights of the mortgagees in the interpleaded funds, it will necessarily follow that the Government will have no objection to the allowance of attorneys' fees to plaintiffs, we hold that the district court did not err in making such allowance.

The judgment of the district court is affirmed.

Affirmed.